**The STATE of Ohio, Appellant,**

v.

**BARNETT, Appellee.**

[Cite as *State v. Barnett* (1998), 124 Ohio App.3d 746.]

Court of Appeals of Ohio, Second District,
Montgomery County.

No. 16281.

Decided Jan. 9, 1998.

*George A. Katchmer, Jr.,* Montgomery County Assistant Prosecuting Attorney, Appellate Division, for appellant.

*David Chicarelli,* for appellee.

FREDERICK N. YOUNG, Presiding Judge.

The state of Ohio appeals from a judgment of the Montgomery County Common Pleas Court dismissing two counts of a five-count indictment against appellee John Oliver Barnett.

The state advances three assignments of error. First, it contends that the trial court erred by relying upon *State v. Urvan* (1982), 4 Ohio App.3d 151, 4 OBR 244, 446 N.E.2d 1161, and finding that a prosecutor in one county can plea bargain with a defendant and prevent prosecution in another county for a separate offense. The state also claims that the trial court erred by ruling that a Warren County prosecutor possessed "apparent authority" to bind the Montgomery County Prosecutor's Office to a Warren County plea bargain. Finally, the state argues that the trial court erred by not using extrinsic evidence to find that the Warren County Prosecutor's Office and the appellee intended their plea bargain to prevent further prosecution only in that county.

The present appeal stems from Barnett's May 19, 1995 no-contest plea in Warren County to one count of gross sexual imposition involving Monica Wilson, his stepdaughter. In return for Barnett's plea, the Warren County Prosecutor's Office agreed to dismiss sexual battery and kidnaping charges and agreed that no additional charges would be filed. More specifically, the oral plea agreement, which was entered into the record in Barnett's Warren County prosecution and also provided to the trial court below, provided as follows:

"WARREN COUNTY ASST. PROSECUTOR: 'In return for the Defendant's plea of no contest to gross sexual imposition, we would ask that the court dismiss the remaining charges in the indictment. It is also my understanding, and this has been confirmed by Jeff Kirby, who represents the mother of the girl in a civil case in domestic relations court, that there will be no further charges filed in this matter regarding this girl or any other children here, and also that they have no objection to straight probation in this matter if the court is so inclined in this matter.'

"DEFENSE COUNSEL DAVID CHICARELLI: 'Your Honor, I think that correctly states the situation. He's prepared to enter a no-contest plea, but I want to make sure that the condition of that plea is that there were no—there'll be no further charges. There are four children involved—two stepchildren: the child Monica in this case; another stepchild Michelle, and then his own two natural children, Brittany and Brandon, and that the consideration for this plea is that the representation by the prosecution that no charges of any kind, anywhere are going to filed relating to these children, on anything that's happened to-date, obviously, that the prosecutor's aware of. I don't think that there is anything, but I just want to make sure.'

"PROSECUTOR HASH: 'I have been in contact with Mr. Kirby, who represents them in another case, and that was his representation to me that the family is interested in putting this behind them, and they're not interested in pursuing any other charges in this. They want him to get out of their lives.'

"THE COURT: 'But I raise the question, are you asking only about criminal charges when you say, "any and all charges"?'

"MR. CHICARELLI: 'Criminal charges is [sic] all I'm referring to, your Honor.' "

The trial court subsequently accepted Barnett's plea, found him guilty, and imposed a sixty-day jail sentence followed by probation. Thereafter, on November 21, 1995, after Barnett had completed his Warren County jail term, a Montgomery County Grand Jury indicted him on five counts of gross sexual imposition involving Brittany Barnett, his daughter, and Monica Wilson.

Barnett subsequently filed a motion to dismiss the indictment. Following a hearing, the trial court determined that the Warren County plea agreement precluded Barnett's indictment in Montgomery County for offenses involving Brittany Barnett. Consequently, the trial court dismissed those portions of the indictment alleging sexual acts with Brittany but allowed the state to continue its prosecution for alleged offenses involving Monica Wilson. The court based this distinction upon evidence in the record suggesting that the Warren County Prosecutor's Office knew about Barnett's alleged sexual activity in Montgomery

County with Brittany when it entered the plea agreement. Conversely, the trial court found no evidence in the record suggesting that the Warren County Prosecutor's Office knew about Barnett's alleged activity with Monica Wilson in Montgomery County. The trial court found this distinction significant because the Warren County plea agreement precluded subsequent prosecution only for criminal conduct about which Warren County prosecutors were aware. The state of Ohio then filed a timely appeal challenging the trial court's ruling. The state advances the following three assignments of error, which it incorrectly phrases as propositions of law:

"I

"A county prosecutor can only prevent prosecution in another county when the actions of a defendant constitute one continuous course of conduct."

In its first assignment of error, the state contends that the trial court erred by relying upon *State v. Urvan* (1982), 4 Ohio App.3d 151, 4 OBR 244, 446 N.E.2d 1161, for the proposition that the actions of a prosecutor in one county may bind the state of Ohio in other counties. In its decision sustaining part of Barnett's motion to dismiss, the trial court recognized that *Urvan* involved a defendant whose actions constituted a course of criminal conduct. The trial court then stated: "The acts of [Barnett] may not constitute such a course of criminal conduct, but this Court does not believe that the absence of that element prevents the binding effect of the prosecutor's action." Contrary to the trial court's ruling, the state insists that under *Urvan*, a prosecutor in one county can plea bargain away another county prosecutor's ability to bring charges only when the defendant's acts constitute a single course of criminal conduct.

In *Urvan*, the Cuyahoga County Court of Appeals determined that for double jeopardy purposes, "the state will be considered as a single entity whether acting through one or the other of its subordinate units, *i.e.*, Medina or Cuyahoga Counties." *Id.* at 155, 4 OBR at 248, 446 N.E.2d at 1165. The court then held that the state is not permitted to pursue separate charges against a defendant in different counties if the charges arise out of the same "course of conduct." *Id.* The defendant in *Urvan* stole items from his employer in Cuyahoga County and hid them in his Medina County home. Cuyahoga County prosecutors subsequently charged the defendant with grand theft, and Medina County prosecutors charged him with receiving stolen property. The *Urvan* court found prosecution in both counties prohibited by double jeopardy principles because the crimes arose from one "course of criminal conduct" and also were allied offenses of similar import. *Id.* at 156–157, 4 OBR at 249–251, 446 N.E.2d at 1166–1168.

Subsequently, however, the Cuyahoga County Court of Appeals limited *Urvan* to its specific facts in *State v. Mutter* (1983), 14 Ohio App.3d 356, 14 OBR 459, 471

N.E.2d 782. In so doing, the appellate court reasoned that a defendant making separate narcotic drug sales on different days in different counties to different persons can be prosecuted for each sale and may not claim double jeopardy because the actions constituted one "course of criminal conduct." *Id.* at 358, 14 OBR at 461, 471 N.E.2d at 785; see, also, *State v. Schmidt* (Apr. 19, 1990), Montgomery App. No. 11327, unreported, 1990 WL 51565, citing *Mutter* with approval and finding separate drug prosecutions in the city of Middletown and Montgomery County not violative of double jeopardy.

Courts in other recent decisions also have declined to read *Urvan* as prohibiting prosecution in two different counties for separate and distinct acts committed on different dates. In *State v. Cunningham* (Aug. 14, 1992), Seneca App. No. 13-92-5, unreported, 1992 WL 198123, for example, the Third District Court of Appeals found nothing in *Urvan* prohibiting the appellant's prosecution in both Seneca and Erie Counties for marijuana possession. The court reasoned that "[t]o hold otherwise would allow a defendant to possess marijuana in a multitude of locations throughout the state and be prosecuted on only one charge of possession of drugs. Certainly the Double Jeopardy Clauses of the United States and Ohio Constitutions are not to be construed in such a manner." Likewise, in *State v. Moore* (Mar. 28, 1985), Athens App. No. 1172, unreported, 1985 WL 6587, the Fourth District Court of Appeals reasoned: "Obviously, if a person operates two distinct gambling operations, the person may be charged with two counts of gambling. To permit the gambler to claim double jeopardy, when facing conviction for the second operation would allow gamblers to operate as many gambling establishments as they wish without additional risk. Similarly, to allow an illegal hunter to claim double jeopardy when facing conviction for a second, unrelated hunt would declare open season on all protected animals." ·

■ Having reviewed the foregoing authorities, we find that the trial court's reliance upon *Urvan* misplaced. As interpreted by both this court and other appellate districts, *Urvan* establishes only that prosecutors in two different counties may not pursue separate charges for *allied offenses of similar import.* See, also, *State v. Clelland* (1992), 83 Ohio App.3d 474, 485, 615 N.E.2d 276, 284 ("Where the offenses committed in different counties are not allied offenses of similar import, *Urvan* * * * [is] inapposite."). Nothing in *Urvan* supports the trial court's broad conclusion that other actions of one prosecutor, *i.e.,* plea bargaining, etc., can bind prosecutors in other counties.

■ In the present case, Barnett's actions in Warren County and Montgomery County do not constitute allied offenses of similar import, and we perceive no double jeopardy implications arising from his prosecution in both counties. The two prosecutions involved different acts of gross sexual imposition allegedly committed in different counties on different days. Accordingly, nothing in *Urvan*

precluded the Montgomery County Prosecutor's Office from indicting Barnett. Thus, we sustain the state's first assignment of error to the extent that it challenges the trial court's reliance upon *Urvan*, *supra*.

"II

"In order to find apparent authority the principal must have held the agent out as being vested with such authority."

In its second assignment of error, the state claims that the trial court erred by using the doctrine of "apparent authority" to support its finding that Montgomery County prosecutors were bound by the Warren County plea agreement.

The trial court supported its November 8, 1996 decision and order dismissing the counts that alleged Barnett's sexual activity with his daughter, Brittany, by first reasoning:

"A plea agreement is a form of a contract which is enforceable by either party. *State v. Matthews* [*Mathews*] (1982), 8 Ohio App.3d 145 [8 OBR 202, 456 N.E.2d 539]. The Prosecuting Attorney for each County represents the Plaintiff, the State of Ohio. It is possible for a prosecutor to take action for the State in one County which binds the State in every County."

Later in its opinion, the trial court added:

"Even if [Warren County assistant prosecutor] Mrs. Hash (and her superior, the Warren County Prosecutor) lacked authority to make this [plea bargain] agreement, the Defendant would be justified in believing the prosecutor had this authority. The prosecuting attorney clearly represented the State; the agreement was made in open court on the record before the judge assigned to his case. Believable appearance of authority existed. He relied on the agreement, accepted the sentence of the court, and served the term of incarceration."

In its appellate brief, the state contests the trial court's finding that the Warren County prosecutor can bind Montgomery County prosecutors to a plea bargain precluding prosecution for crimes occurring in Montgomery County without the Montgomery County prosecutor's consent. The state also challenges the trial court's finding that the Warren County prosecutor acted with "apparent authority," thereby binding Montgomery County prosecutors to its plea agreement.

In response, appellee Barnett argues that a county prosecutor acts as an agent of the state of Ohio. In support of his argument, Barnett relies largely upon R.C. 309.08, which provides that "the prosecuting attorney shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party * * *." Consequently, he insists that a county prosecutor possesses the

actual authority to bind other counties' prosecutors. Additionally, Barnett stresses the trial court's determination that, at a minimum, the Warren County Prosecutor's Office possessed apparent authority to bind other counties to its agreement. After reviewing relevant legal authorities, however, we find persuasive the state's argument that the Warren County prosecutor possessed neither actual nor apparent authority to prevent Barnett's prosecution for gross sexual imposition in Montgomery County.

At the outset, we note the absence of Ohio case law addressing the narrow issue presented: whether one county's prosecutor has the actual or apparent authority to prohibit a defendant's prosecution in a second county for an unrelated offense without the second county's consent. As we explained above, *Urvan* and its progeny establish only that a defendant's prosecution in one county precludes prosecution in other counties when the defendant's criminal acts constitute allied offenses of similar import. In the present case, however, Barnett's act of gross sexual imposition in Warren County and his alleged acts in Montgomery County do not constitute allied offenses of similar import.

In resolving the narrow issue before us, we find instructive the analysis provided by the United States Seventh Circuit Court of Appeals in *Staten v. Neal* (C.A. 7, 1989), 880 F.2d 962, interpreting Illinois law. That case involved a petition for a writ of habeas corpus filed by Gary Staten, who had been imprisoned in a Fayette County, Illinois correctional facility until February 24, 1982. On that date, he was transferred to a Champaign County, Illinois correctional facility. Staten left the Champaign County facility on March 24, 1982, on a three-hour pass and never returned. Several months later, he was arrested in Indiana pursuant to an Iowa arrest warrant for robbery. Indiana officials notified Illinois authorities but returned Staten to Iowa. Prior to his robbery trial in Iowa, prosecutors there contacted Fayette County, Illinois prosecutors and asked whether they would waive prosecution on an escape charge in return for Staten's guilty plea to second-degree robbery in Iowa. Fayette County prosecutors agreed.

After Staten's release from confinement on the robbery conviction, he returned to Illinois. Subsequently, Champaign County, Illinois prosecutors—who had not been consulted by either Iowa authorities or the Fayette County, Illinois prosecutors—prosecuted Staten for escape, and he was convicted in a bench trial. An Illinois appellate court affirmed Staten's conviction, holding that a state's attorney in one county could not bind a state's attorney in another county under Illinois law. After the Illinois Supreme Court denied review, Staten filed a petition for a writ of habeas corpus in federal court. The district court denied the writ, and the United States Seventh Circuit Court of Appeals affirmed the district's judgment.

In its ruling, the appellate court first determined that the Iowa prosecutor made a good-faith promise that Staten would not face prosecution in Illinois for escape if he pleaded guilty to the Iowa robbery. The appellate court also recognized that the promise was not kept, and that normally Staten would have been entitled to withdraw his plea in Iowa. The court found this option unavailable, however, because Staten had completed his Iowa sentence when Champaign County, Illinois prosecutors sought and obtained the escape conviction in contravention of Staten's Iowa plea agreement.

The court then addressed the legal issues implicated by Staten's "unique circumstances," framing the issue as "whether the Due Process Clause prohibits a state's attorney in Illinois, whose jurisdiction includes the county in which the crime was committed, from prosecuting a defendant when a state's attorney from another Illinois county promised the defendant that he would not be prosecuted." *Id.* at 963–964. The court reasoned that resolution of the issue hinged upon "whether the Fayette County State's Attorney (the state's attorney who made the promise) had authority to bind in a plea agreement the Champaign County State's Attorney (the state's attorney who nevertheless prosecuted Staten)." *Id.* at 964.

At the outset, the Seventh Circuit Court of Appeals recognized that the Illinois Supreme Court never had determined whether a state's attorney in one county could waive prosecution for a crime committed in another county. *Id.* The court, however, did find instructive an Illinois statute providing that "[t]he duty of each State's attorney shall be: (1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." Ill.Rev. Stat. Chapter 14, Section 5(1) (1985). The court also recognized Ill.Rev.Stat. Chapter 38, Section 1003–6–5 (1985), providing that "[w]hen any person is charged with committing an offense while confined by the Department [of Corrections], cognizance thereof shall be taken by the circuit court *of the county wherein such crime was committed.*"

The Seventh Circuit found these statutes supportive of the state appellate court's conclusion that Fayette County prosecutors lacked the authority to promise non-prosecution for an offense occurring in Champaign County. *Id.* Additionally, the Seventh Circuit rejected Staten's arguments that Fayette County prosecutors possessed either the inherent or apparent authority to bind Champaign County prosecutors to the plea agreement. In so doing, the court acknowledged that "contract and agency principles may provide some guidance in addressing plea bargaining issues * * *." *Id.* at 965. The court then applied agency law to Staten's argument that the Fayette County prosecutors, as agents of the state, possessed inherent or apparent authority to bind other counties.

First, the court deemed Staten's argument only "partially correct" because the Illinois legislature had invested county prosecutors with only the authority to act as state agents and pursue crimes occurring in their county. *Id.* at 965–966. The prosecutors' jurisdiction, the court stressed, did not extend to other counties. "Inherent authority only extends to those actions which normally would be considered a part of the agent's actual responsibilities," the court explained. *Id.* at 966.

Similarly, the Seventh Circuit found apparent authority lacking, stating:

"In order for there to be apparent authority, a party must have, through its words and actions, indicated to a third party that another party was empowered to act as its agent. * * * The State of Illinois did not represent that the Fayette County State's Attorney was its agent in counties outside the county in which he was elected. * * * We presume that a resident of Illinois knows the contents of its laws and therefore is bound by them. * * * The law as created by the State of Illinois did not imply that a state's attorney could bind the State in another state's attorney's jurisdiction when negotiating a plea agreement." *Id.* at 966.

The Seventh Circuit also found unpersuasive Staten's reliance upon several federal cases involving promises by United States Attorneys purporting to bind other United States Attorneys' Offices, reasoning: "State's attorneys in Illinois work for their respective counties, not the State Attorney General. United States Attorneys, on the other hand, work for, are accountable to, and can be controlled by one central authority—the Attorney General of the United States. While United States Attorneys arguably speak for the entire federal government, the same cannot be said for state's attorney's in Illinois." *Id.;* see, also, *People v. Woods* (Ill.App.1988), 169 Ill.App.3d 126, 130, 119 Ill.Dec. 722, 725, 523 N.E.2d 190, 193 (concluding that "it would be absurd to hold, without authority, that one county's State's Attorney could bind another county's State's attorney without the latter's knowledge and approval regardless of court approval").

We find the foregoing reasoning persuasive and equally applicable in the present case. In fact, the present appeal is nearly identical to *Staten* in several significant respects. First, as in *Staten,* appellee Barnett has completed his Warren County sentence, thereby eliminating withdrawal of the Warren County plea as a viable option. Second, as in *Staten,* a prosecutor in one county entered a plea bargain and waived prosecution for crimes committed in a second county. Third, the parties advance legal arguments nearly mirroring those articulated in *Staten.*

Having reviewed the parties' respective arguments, we conclude that the Warren County Prosecutor's Office had no authority to prevent Barnett's indictment in Montgomery County for gross sexual imposition allegedly committed in Montgomery County. In reaching this conclusion, we first note our longstanding

recognition that a county prosecutor has a duty "to inquire into commission of crime within his territorial jurisdiction * * *." *State v. Nevius* (1945), 77 Ohio App. 161, 177, 32 O.O. 485, 491–492, 66 N.E.2d 243, 251, modified on other grounds (1947), 147 Ohio St. 263, 34 O.O. 210, 71 N.E.2d 258; see, also, R.C. 309.08(A) ("The prosecuting attorney may inquire into the commission of crimes within the county."). As did the *Staten* court, we simply find no Ohio statutory law or case law authorizing a county prosecutor to waive prosecution for an offense committed outside his county.

Although we agree with Barnett that a county prosecutor is an agent of the state, we also agree with the *Staten* court's recognition that the county prosecutor's agency authority extends to the county line when investigating and prosecuting crimes. Thus, the county prosecutor is an agent of the state with respect to crimes committed in his county. We also find unpersuasive Barnett's contention that the Warren County prosecutor acted with apparent authority. As in *Staten, supra,* the state of Ohio did not represent that Warren County prosecutors were authorized to act as its agents and plea bargain with respect to offenses committed wholly outside Warren County. The laws of Ohio support no such inference. Finally, this court has reviewed numerous federal cases involving purported attempts by United States Attorneys. in one district to bind United States Attorneys in another district. See, *e.g., United States v. Boulier* (E.D.N.Y.1972), 359 F.Supp. 165; *United States v. Lieber* (E.D.N.Y.1979), 473 F.Supp. 884; *United States v. Carter* (C.A. 4, 1972), 454 F.2d 426; *United States v. Ingram* (C.A. 7, 1992), 979 F.2d 1179; *United States v. Alessi* (C.A. 2, 1976), 544 F.2d 1139; *United States v. Laskow* (E.D.N.Y.1988), 688 F.Supp. 851; see, also, *Staten, supra,* 880 F.2d at 966 (citing additional federal case law). Although such agreements have, on occasion, been held to bind multiple United States Attorneys' Offices, we find the federal case law distinguishable.

As the Seventh Circuit Court of Appeals recognized in *Staten,* United States Attorneys are under the direct supervision and control of the United States Attorney General. Therefore, they arguably speak for the entire federal government. While county prosecutors in Ohio certainly interact with the Ohio Attorney General's Office, they are elected by local residents and work on behalf of those constituents, inquiring into the commission of crimes within the county.

In short, we find no Ohio statutory law or case law authorizing the Warren County Prosecutor's Office to prevent Barnett's prosecution in Montgomery County for sexual offenses he allegedly committed in Montgomery County. Likewise, based upon the foregoing analysis, the Warren County Prosecutor's Office lacked the apparent authority to plea bargain away the Montgomery County prosecutor's ability to seek Barnett's indictment and conviction. Accordingly, we sustain the state's second assignment of error.

"III

"Extrinsic evidence is admissible to ascertain the intent of the parties to an agreement when the contract is unclear or ambiguous or when the circumstances surrounding the agreement give the plain language a special meaning."

In its final assignment of error, the state argues that Barnett's plea agreement with Warren County prosecutors is ambiguous. Specifically, the state contends that the agreement does not state clearly whether it precludes additional prosecutions only in Warren County or throughout the state. Absent an unambiguous statement in the parties' agreement that it was intended to bind all Ohio prosecutors, the state insists that the trial court should have looked to extrinsic evidence and found that the parties never intended to bar prosecution elsewhere in Ohio.

The state's assignment of error alleges that "extrinsic evidence is admissible" to resolve contractual ambiguity. The state admits in its brief, however, that the trial court did admit and consider extrinsic evidence regarding the Warren County plea agreement's meaning. The state's true contention is that the trial court erred by finding the Montgomery County Prosecutor's Office bound by the agreement notwithstanding the extrinsic evidence it reviewed.

Our resolution of the two previous assignments of error, however, renders this assignment of error moot. As we explained above, even if the Warren County plea agreement *unambiguously* purports to bind all Ohio prosecutors, as we believe it does, the agreement is ineffective in Montgomery County. One county's prosecutor cannot prevent indictment in a second county, absent the consent of the second county's prosecutor, when the two prosecutions do not involve allied offenses of similar import. *Staten, supra; Urvan, supra.* Thus, ambiguous or not, the Warren County plea agreement remains unenforceable with respect to separate crimes occurring in Montgomery County. Accordingly, pursuant to App.R. 12(A)(1)(c), we need not resolve the state's third assignment of error.

Having sustained the state's first two assignments of error, however, and having found that the Warren County plea agreement does not preclude Barnett's indictment in Montgomery County, we reverse the trial court's judgment and remand this cause for further proceedings.

*Judgment reversed*
*and cause remanded.*

FAIN and GRADY, JJ., concur.