OPINION
Keith Randolph appeals from a judgment of the Miami County Court of Common Pleas which dismissed his complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted.
According to his complaint, in 1990 Randolph was indicted by a grand jury for murder in violation of R.C. 2903.02, with a firearm specification. In December 1990, Randolph entered into a plea agreement, wherein the state agreed to amend its indictment to charge Randolph with voluntary manslaughter, in violation of R.C. 2903.03(A), with a firearm specification and Randolph agreed to plead guilty to the amended indictment. On December 12, 1990, the trial court granted the state's motion to amend the indictment and Randolph pled guilty. Randolph was convicted of voluntary manslaughter and sentenced to five to twenty-five years plus three years actual incarceration on the firearm specification on January 7, 1991.[1]
On March 1, 1998, the Ohio Department of Rehabilitation and Correction ("DRC") issued the "Ohio Parole Board Guidelines Manual." These guidelines were created "to assist the [Ohio Adult Parole Authority ("APA")] in making consistent, fair, and equitable decisions in determining the amount of time an offender must serve before being released to the community, without removing the opportunity for individual case consideration." The revised guidelines were in the form of a grid, on which thirteen categories of offense seriousness were listed on the vertical axis and four risk of recidivism categories were listed on the horizontal axis. By locating the intersection of the categories on the vertical and horizontal axes which applied to the crime committed by the offender, the APA was informed of a guideline range of months to be served by the offender before consideration of release. The guidelines assigned the offense of murder, if the victim was not a peace officer or child less than thirteen years of age, to category 11. The offense of voluntary manslaughter was assigned to category 9.
On November 13, 1998, Randolph appeared before the APA for a hearing. During the hearing, the APA placed Randolph in category 11, the category for the offense of murder, in order to determine the range of months he would have to serve before being considered for release. They gave him a score of 1 on the risk of recidivism scale. This placed Randolph in a guideline range of 180 to 240 months to be served before consideration of his release. If Randolph would have been placed in category 9, he would have fallen within the guideline range of 84 to 120 months to be served before consideration of his release.
On January 12, 1999, Randolph filed a complaint against the APA and Gary Nasal, the Miami County Prosecutor, alleging that the APA had breached the plea agreement or "contract" that he had made with the state and requesting declaratory judgment to force the APA to place him in category 9. The APA filed a motion to dismiss Randolph's complaint for failure to state a claim and the trial court granted the motion on March 31, 1999.
Randolph advances two assignments of error on appeal. Because they are interrelated, we will address them together.
 I. THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF PURSUANT TO CIV.R. 12(B)(6) WHEN IT IGNORED THE PLAIN ALLEGATIONS AND REQUESTS FOUND IN THE COMPLAINT, AND WHERE A REAL CONTROVERSY AROSE BETWEEN PARTIES CONCERNING APPELLANT'S CONTRACT OR PLEA AGREEMENT WITH THE STATE OF OHIO, AS WELL AS THE APA'S APPLICATION OF THE "NEW" PAROLE BOARD GUIDELINES IMPLEMENTED MARCH 1, 1998.
 II. THE TRIAL COURT ERRED WHEN IT FAILED TO DETERMINE THAT THE STATE OF OHIO, ITS OFFICERS, EMPLOYEES, AGENTS, DEPARTMENTS, AND AGENCIES, TO INCLUDE THE DEPARTMENT OF REHABILITATION AND CORRECTION AND ITS DIVISION, THE OHIO ADULT PAROLE AUTHORITY, ARE BOUND BY THE TERMS OF THE AGREEMENT BETWEEN APPELLANT AND ITSELF, THAT AGREEMENT BEING ENTITLED "PLEA AGREEMENT," AS WAS MEMORIALIZED BY THE JUDGMENT ENTRY FILED IN THE COURT OF COMMON PLEAS FOR MIAMI COUNTY, OHIO, ON DECEMBER 12, 1990; AND THAT ON NOVEMBER 13, 1998, THE STATE OF OHIO, IN THE PERSON OF THE OHIO ADULT PAROLE AUTHORITY[,] BREACHED SAID AGREEMENT BY DENYING APPELLANT THE BENEFIT OF THE REDUCTION IN THE OFFENSE CHARGED WHICH WAS GIVEN AS INDUCEMENT, OR IN EXCHANGE FOR APPELLANT'S GUILTY PLEA.
Randolph argues that the APA's decision to categorize him under the offense of murder when he had only been convicted of voluntary manslaughter breached the plea agreement or contract that he had made with the state.
"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v.University Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus. "`In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party.'" Yorkv. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143, 144,573 N.E.2d 1063, 1064-1065, quoting Mitchell v. Lawson Milk Co.
(1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756.
In his complaint, Randolph alleged the following:
 29. That on November 13, 1998, the State of Ohio in the person of the [ADA] breached the agreement reached with Plaintiff Keith Randolph, as memorialized by the judgment entry filed in the Court of Common Pleas for Miami County, Ohio, Case No. 90CR195 on December 12, 1990, when it disregarded the plea agreement to incarcerate Plaintiff for the offense of voluntary manslaughter in exchange for Plaintiff's plea of guilty, and instead placed Plaintiff in the revised parole guidelines for the offense of murder causing Plaintiff to serve between 180-210 months in prison, instead of 84-120 months as is required for the offense of voluntary manslaughter.
 30. That the breach of the plea agreement as alleged in ¶ 29 is in violation of both the State and Federal Constitutions, as well as State law, and is therefore wrongful; and except in a court of equity, Plaintiff is without remedy.
 31. Plaintiff is being damaged by being incarcerated for the offense of murder when he is, in fact, convicted and order [sic] to be confined for the offense of voluntary manslaughter, causing him to serve more time in prison than he would if the [APA] was treating Plaintiff as an offender of the voluntary manslaughter statute.
 32. The breach of contract, and the resulting damage from the breach of contract, requires the issuance of an injunction ordering Defendant [APA] to comply with the terms of the contract or agreement; and to immediately rehear Plaintiff [sic] at a parole hearing where he is to be placed in category 9, the offense category for voluntary manslaughter, and granted a parole date within the guidelines found at the intersection of category 9, and risk category 1, which requires 84-120 months of incarceration.
A plea agreement "`is contractual in nature and subject to contract-law standards.'" State v. Butts (1996), 112 Ohio App.3d 683,685-686, 679 N.E.2d 1170, 1172, quoting Baker v. UnitedStates (C.A.6 1986), 781 F.2d 85, 90, certiorari denied (1986),479 U.S. 1017, 107 S.Ct. 667. A county prosecutor is an agent of the state. See State v. Barnett (1998), 124 Ohio App.3d 746, 755,707 N.E.2d 564, 570, discretionary appeal not allowed (1998),81 Ohio St.3d 1494, 691 N.E.2d 1057; R.C. 309.08. Thus, the Miami County prosecutor entered the plea agreement with Randolph on behalf of the State of Ohio. See id.
The APA is an administrative unit of the DRC, R.C. 5149.02, and the DRC is an administrative department of the State of Ohio. R.C. 121.02(P). As part of an administrative agency created by the state, the APA is subject to contracts made on behalf of the state. Thus, presuming that the factual allegations in the complaint are true, we cannot conclude that it is beyond doubt that Randolph could not prove a set of facts entitling him to succeed on his claim. The trial court therefore erred in dismissing his complaint for failure to state a claim upon which relief could be granted. Finding this argument to be persuasive, we will not address Randolph's equal protection arguments at this time.
Although we have determined that it is not beyond doubt that Randolph could not prove a claim, we believe that further comment is necessary to clarify the issue in this case. The trial court gave two reasons for granting the APA's motion to dismiss. First, the court stated that Randolph did not have a constitutional or state-created right to parole. Second, it stated that the APA was permitted to consider the original indictment in its parole decision-making process. Neither of these issues was in dispute, however, and neither was dispositive of Randolph's claim.
Randolph correctly admits that he had no right to parole.State ex rel. Henderson v. Ohio Dept. of Rehab. Corr. (1998),81 Ohio St.3d 267, 268, 690 N.E.2d 887, 888, motion for reconsideration denied (1998), 81 Ohio St.3d 1527,692 N.E.2d 1027. He also correctly agrees that the APA was entitled to consider the original indictment of murder when making its decision. See State ex rel. Askew v. Goldhart (1996), 75 Ohio St.3d 608,609, 665 N.E.2d 200, 201. He argues, however, that pursuant to the contract he had made with the state, he was entitled to be placed in category 9 for voluntary manslaughter, and within the guideline range of 84 to 120 months before consideration of release. Thus, he is claiming that although the APA may be entitled to decide that he should serve the maximum sentence given to him by the trial court based on the circumstances surrounding the offense and whether he might have been convicted of murder but for his plea, the APA should place him in the appropriate offense seriousness category and guideline range in beginning its decision-making process as to his eventual release.
Randolph's assignments of error are sustained.
The judgment of the trial court will be reversed, and this matter will be remanded for further proceedings.
YOUNG, J., concurs.
[1] Randolph alleged he received an eight to twenty-five year sentence, three years of which is actual incarceration. In its motion to dismiss, the Ohio Adult Parole Authority ("APA") represented that Randolph received an aggregate sentence of eight to twenty-five years: five to twenty-five for voluntary manslaughter and three years actual incarceration on the firearm specification. An exhibit to Randolph's response to the motion to dismiss, an APA Offender Hearing Record, states that Randolph's sentence on the principal charge of voluntary manslaughter was five to twenty-five years. Based on R.C. 2929.71 as it existed at the time of Randolph's plea and sentencing and on the record before us, we think the sentence actually imposed was five to twenty-five years for voluntary manslaughter plus three years actual incarceration on the firearm specification. The actual sentence imposed does not affect our resolution of the issue raised in this appeal.