OPINION
{¶ 1} Appellant, Donald Hall, appeals from a final judgment of the Trumbull County Court of Common Pleas, denying his motion to withdraw his guilty plea. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} In January 1992, appellant was indicted on three counts of rape, felonies of the first degree, in violation of R.C.2907.02(A)(1)(b) and (A)(2), and each count carried a sentence of life imprisonment. Appellant entered a plea of not guilty by reason of insanity to all charges, and the trial court received appellant's plea. Appellant was later also indicted on one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4). On September 18, 1992, appellant withdrew his not guilty pleas and entered a plea of guilty to an amended indictment charging him with three counts of rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(b). Pursuant to the plea bargain, the charge of gross sexual imposition was nolled.
 {¶ 3} A transcript of the plea hearing has not been made part of the record in this matter. However, appellant's written plea, signed by appellant himself, states, "* * * I am making my plea voluntarily. * * * I understand that the Court upon acceptance of a plea of guilty may proceed with judgment and sentencing. I understand I have the right to a jury trial. I understand that at trial I have the right to confront and cross-examine witnesses against me, and the right to have compulsory process for obtaining witnesses in my favor and to require the State to prove my guilty [sic] beyond a reasonable doubt at a trial at which I cannot be compelled to testify against myself. However, I waive all those rights, including right [sic] to trial by jury. I withdraw my former plea of `not guilty' and enter a plea of `guilty' to the amended indictment * * *.
 {¶ 4} "Furthermore, I am entering the plea of guilty after being fully informed by my counsel and by the Court of the elements of the charge. * * *
 {¶ 5} "Furthermore, I have been informed by the Court and understand that I am [not] eligible for probation * * *. I am, therefore, now satisfied that I am now entering this plea with full understanding of my legal rights under the facts and circumstances as explained me [sic] by my attorney and the Court."
 {¶ 6} The presentence report and interview with the victim indicated that appellant used force and/or a threat of force against the victim to compel him to submit to the crimes and to convince him not to report the activity.
 {¶ 7} On November 9, 1992, appellant was sentenced to an indefinite term of ten to twenty-five years, on each of the three counts. The sentences were to be served concurrently.
 {¶ 8} On September 19, 1996, appellant filed a petition to vacate or set aside his sentence. On May 13, 1997, appellant filed a petition to vacate and set aside his guilty plea. On July 18, 1997, appellant moved for shock probation. These motions were all denied.
 {¶ 9} The Ohio Adult Parole Authority (the "APA") adopted new parole guidelines on March 1, 1998. See, e.g., Layne v. OhioAdult Parole Auth., 97 Ohio St.3d 456, 2002-Ohio-6719, at ¶ 1. "According to the APA, the revised guidelines were intended to `promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making' without removing the opportunity for consideration on an individual case basis." Id.
 {¶ 10} "The APA's new guidelines set forth a `parole guidelines chart' to determine the range of time that a prisoner should serve before being released. When considering inmates for parole[,] the APA relies on a combination of two factors: the seriousness of an offender's criminal offense and the offender's risk of recidivism. To use the guidelines chart, each inmate is assigned two numbers that correspond to the above factors, an offense category score and a criminal history/risk score. The assigned numbers are then located on the guidelines chart, which is a grid with the offense category scores along the vertical axis and the criminal history/risk scores along the horizontal axis. At each intersection of the two scores[,] there is an `applicable guidelines range,' indicating the range of months an inmate must serve before being released. During an inmate's first hearing under the new guidelines, the parole board generally gives an inmate a `projected release date,' which presumably falls within the applicable guideline range. The projected release date is the date that the inmate is eligible for release, either on parole or on expiration of sentence." Id. at ¶ 2.
 {¶ 11} On December 8, 1998, eighty-one months after the imposition of appellant's sentence and only nine months after the APA's adoption of new parole guidelines, appellant received his first parole hearing. Pursuant to the new guidelines, the Ohio Parole Board ("the parole board") was required to assign appellant an offense category score.
 {¶ 12} The parole board assigned appellant as a "Category 10/Risk 1" offender.[1] The parole board concluded, "[i]nmate, over an extended period of time, would anally rape his young son, while dressed in women's clothing. Inmate, in the presence of his son, would also engage in masochism (self) and bestiality. * * * Due to the unusually aggravated nature of the crime(s), the very young age of this victim, and the long term emotional damage to the victim, an upward departure to 180-240 months is warranted. * * *." The parole board thus summarily denied appellant parole. {¶ 13} The version of R.C. 2967.13 in effect at the time appellant entered his guilty plea described parole guidelines. According to that version, appellant would have been eligible for parole after completion of six years and eight months of imprisonment.[2] With the classification implemented by the parole board, appellant was not eligible for parole for an additional 120 to 180 months.[3]
 {¶ 14} On September 18, 1999, appellant moved to withdraw his guilty plea, and he was granted leave and supplemented this motion on October 4, 2000. In his initial motion, appellant alleged ineffective assistance of counsel and that his plea was not knowing and voluntary. In his October 4, 2000 supplement, appellant specifically argued that the state, the APA, and the parole board breached his plea agreement via their application of the new parole guidelines to his parole eligibility. In a November 9, 2000 judgment entry, the trial court denied appellant's September 18, 1999 motion to withdraw his plea without conducting a hearing. The trial court stated that it reviewed appellant's initial motion and his supplement and then determined that appellant had not demonstrated a manifest injustice requisite to withdraw his plea post-sentence.
 {¶ 15} Appellant was granted leave, and on February 7, 2001, he filed a delayed appeal, challenging the trial court's November 9, 2000 denial of his motion to withdraw his plea. This court dismissed the appeal on May 24, 2001 due to appellant's failure to prosecute his claim.
 {¶ 16} On September 14, 2001, appellant again moved to withdraw his plea, this time predicated on alleged new evidence. Appellant again alleged ineffective assistance of counsel and that his plea was not knowing and voluntary. The trial court denied appellant's motion on October 16, 2001, and appellant appealed the judgment to this court on November 5, 2001. We affirmed the judgment of the trial court on September 6, 2002. See State v. Hall, 11th Dist. No. 2001-T-0124, 2002-Ohio-4704.
 {¶ 17} The Supreme Court of Ohio issued its decision inLayne on December 18, 2002. On June 25, 2003, appellant again filed a motion to withdraw his guilty plea, and he requested an evidentiary hearing on the motion. Relying heavily on Layne, appellant argued that the "State of Ohio, in the form of the Ohio Parole Board[,] has breached defendant's plea bargain agreement by denying defendant his statutory parole consideration and has effectively resentenced him to a term not anticipated by his plea bargain, this court's sentencing journal entry, legislative intent or statute * * *."
 {¶ 18} Essentially, appellant contended that revisions to R.C. 2967.13 have increased his parole eligibility date from eighty to an extra 120 months, thereby breaching the terms of his original plea agreement. He contended, "[i]n April, 1998, after [appellant's] plea bargain and sentencing, and before his first statutory parole eligibility hearing, the Ohio Parole Board adopted new parole guidelines and a new `Parole Guidelines Chart.' * * * These `guidelines' are neither statutory enactments, nor administrative regulations, and lack the force of law." Accordingly, appellant argued that his guilty plea was rendered meaningless.
 {¶ 19} The trial court denied appellant's motion in a July 31, 2003 judgment entry. According to the trial court, appellant "argues that revisions to R.C. 2967.13 have increased his parole eligibility date from 80 to more than 120 months, thereby breaching the terms of his original plea agreement * * *. [Appellant] postulated this argument with identical exhibits in an October 10, 2000 supplement to yet another Crim.R. 32.1 motion filed with this Court on September 19, 1999. In an entry dated November 9, 2000, this Court specifically referenced this supplement (the exhibits from which have been recycled into [appellant's] latest Crim.R. 32.1 motion) and denied his motion. Therefore, this Court finds [appellant's] most recent Crim.R. 32.1 motion barred by the doctrine of res judicata."
 {¶ 20} Despite this, the trial court addressed the merits of appellant's motion. The trial court ultimately determined that appellant had not met his burden to demonstrate a manifest injustice, and, thus, denied his motion. The trial court reasoned, "[appellant's] plea agreement makes no reference to his parole eligibility. Furthermore, the Ohio Revised Code creates no constitutional right for an inmate to be released from prison prior to the expiration of a valid sentence. State ex. relLanham v. Ohio Adult Parole Authority (1997), 80 Ohio St.3d 425,426-427. As the trial court imposed a 10 to 25 year sentence in 1992, [appellant's] valid sentence has not yet expired. Additionally, the Ohio Supreme Court has held that a declaratory judgment is the proper remedy to determine the constitutionality or constitutional application of parole guidelines. Hattie v.Anderson (1994), 68 Ohio St.3d 232, 235. A Crim.R. 32.1 motion is therefore an improper legal vehicle for this complaint.
 {¶ 21} "[Appellant] relies upon the Ohio Supreme Court's recent decision in Layne v. Ohio Adult Parole Authority (2002),97 Ohio St.3d 456 to support his theory of a breach of his 1992 plea agreement based on his designation as a Category 10, Risk 1. According to [appellant's motion], he appeared before the Ohio Parole Board December 8, 1998, for his first parole hearing `at the "expiration of his minimum term," under R.C. 2967.13 as it existed at the time of his plea bargain and conviction * * *.' [Appellant] acknowledges in his own motion that at the time of his plea, he expected to appear before the Parole Board within 80 months of his sentence. Therefore, this Court can find no manifest injustice to correct. He received a hearing in accordance with his own expectations. * * *
 {¶ 22} "* * * This Court finds no breach in [appellant's] plea agreement based on the fact that following a hearing which occurred consistent with [appellant's] expectations at the time of his plea, the [APA] denied parole and designated him a Category 10, Risk 1 inmate." Ultimately, the trial court concluded that appellant's motion was barred by the doctrine of res judicata, requested an improper legal remedy, and demonstrated no manifest injustice.
 {¶ 23} From this judgment, appellant appeals and sets forth one assignment of error for our consideration:
 {¶ 24} "[1.] To the prejudice of defendant-appellant, the trial court committed plain error and abused its discretion in violation of the due process clause of the fourteenth amendment to the United States Constitution and Article One, Section Ten of the Ohio Constitution. When the trial court denied defendant-appellant's motion to withdraw his guilty plea and did so without a hearing to ascertain, or establish whether the evidence supported defendant-appellant's motion to withdraw the plea, when said motion was filed pursuant to Criminal Rule 32.1, Rules of Criminal Procedure of the State of Ohio."
 {¶ 25} Crim.R. 32.1 governs withdrawal of a plea. Crim.R. 32.1 provides:
 {¶ 26} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw her plea." See, also, State v. Smith (1977), 49 Ohio St.2d 261,264.
 {¶ 27} Thus, to withdraw a guilty or no contest plea after sentencing has taken place, a defendant must show that the withdrawal is necessary to correct a manifest injustice. The burden of establishing the existence of manifest injustice is on the defendant. Id. at paragraph one of the syllabus; State v.Whiteman, 11th Dist. No. 2001-P-0096, 2003-Ohio-2229, at ¶ 17.
 {¶ 28} Although a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of a guilty plea if the request is made before sentencing, the same is not true if the request is made after the trial court has already sentenced the defendant. Whiteman at ¶ 19, citing State v. Xie (1992), 62 Ohio St.3d 521, paragraph one of the syllabus. In those situations where the trial court must consider a post-sentence motion to withdraw a guilty plea, a hearing is only required if the facts alleged by the defendant and accepted as true would require withdrawal of the plea. Id.
 {¶ 29} A trial court is vested with sound discretion to grant or deny a postsentence motion for withdrawal of a plea. State v.Pearson, 11th Dist. Nos. 2002-G-2413 and 2002-G-2414, 2003-Ohio-6962, at ¶ 7. In reaching its decision, a trial court has the discretion to determine the "good faith, credibility and weight of the movant's assertions * * *." Smith at paragraph two of the syllabus. See, also, State v. Caraballo (1985),17 Ohio St.3d 66, 67. Importantly, "`an undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.'" State v. Bush,96 Ohio St.3d 235, 2002-Ohio-3393, at ¶ 14, quoting Smith at paragraph three of the syllabus.
 {¶ 30} Accordingly, our review of a trial court's denial of a motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. State v. Gibbs
(June 9, 2000), 11th Dist. No. 98-T-0190, 2000 Ohio App. LEXIS 2526, at 6-7. An abuse of discretion connotes more than an error of law or judgment; instead, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Statev. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 31} In appellant's assignment of error, he argues that the trial court erred by denying his motion to withdraw his plea without conducting a hearing. Specifically, appellant relies onLayne to argue that, when applying the new parole guidelines to his case, the state breached his plea agreement. Appellant requests that this court reverse the trial court's decision and remand the matter for further proceedings consistent withLayne. Appellant also argues that a motion to withdraw his plea was a proper remedy, and his claim was not barred by res judicata.
 {¶ 32} Appellant never specifically argues that he is challenging the constitutionality of the new parole guidelines as applied. However, in the interests of justice, and because appellant is acting pro se, we will construe the crux of appellant's argument as a challenge to the constitutionality of the new parole guidelines as applied. For the reasons set forth below, appellant's assignment of error is not well-taken.
 {¶ 33} A negotiated plea agreement is essentially a contract between the state and the defendant. Whiteman at ¶ 38, citingState v. Olivarez (Mar. 31, 1999), 11th Dist. No. 97-L-288, 1999 Ohio App. LEXIS 1434. Accordingly, "the terms of a given plea agreement must be ascertained before it can be determined whether a party breached the agreement." Olivarez at 7.
 {¶ 34} In State v. Calhoun, 11th Dist. No. 2001-L-021, 2002-Ohio-3371, the defendant argued on appeal that his constitutional rights were violated when the APA breached the plea bargain by placing him in an offense Category 11 instead of Category 10 under its guidelines. Id. We concluded that "the APA owed no duty to appellant to ensure that he was placed in any certain guideline level. [The defendant] has failed to show that there was any breach of the terms of his plea agreement. Further, there is nothing in the record to indicate that the terms of [the defendant's] release were anywhere in the plea, and there was also no proof that appellant was promised a specific sentence or a particular guideline level. Instead, [the defendant] entered a plea of guilty in exchange for a reduced charge, and he was sentenced to consecutive terms." Id. at ¶ 23.
 {¶ 35} Our decision in Calhoun stands in conflict with a later decision, by the Supreme Court of Ohio, in Layne. InCalhoun, we stated that the APA owes no duty to a defendant to ensure that he is placed in a certain guideline level. However, the Layne court held that the APA breached plea agreements when it assigned an offense score based on the alleged underlying criminal activity rather than on the offenses to which the inmates pleaded guilty and were convicted. Id. The Layne court concluded that "in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense oroffenses of conviction." (Emphasis added.) Id. at ¶ 28.
 {¶ 36} Further, "the APA, when considering an inmate forparole, still retains its discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant." (Emphasis added.) Id. at ¶ 28, citing Hemphill v. Ohio Adult Parole Auth. (1991),61 Ohio St.3d 385, 386. Thus, the "facts" may be considered for the latter purpose (parole purposes) but not for the former purpose (the offense score).
 {¶ 37} In Layne, the Supreme Court of Ohio followed the reasoning set forth in Randolph v. Adult Parole Auth. (Jan. 21, 2000), 2d Dist. No. 99-CA-17, 2000 Ohio App. LEXIS 121. TheLayne court reasoned, "as an agency of the state, the APA was bound by the state's plea agreement with a criminal defendant." Id. at ¶ 25. Accordingly, the APA must first determine the offense category score that corresponds to the actual offense of which the inmate was convicted. Id. In making its second determination, the APA retains discretion to decide if an inmate should serve his or her maximum sentence. Id. In making that second determination, the APA can consider relevant facts and circumstances, including the offense or offenses set out in the indictment, as well as any circumstances surrounding the offense. Id.
 {¶ 38} In Layne, as in the instant matter, at the time each plea agreement under review was entered into, R.C. 2967.13(A) provided that a prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed "`becomes eligible for parole at the expiration of his minimum term.'" Id. at ¶ 26, quoting Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 25; Am.Sub.H.B. No. 708, 142 Ohio Laws, Part III, 4853, 5010. According to the Layne court, "the words `eligible for parole' in the former R.C. 2967.13(A) ought to mean something." Id. at ¶ 27. The court added, "[i]nherent in this statutory language is the expectation that a criminal offender will receive meaningful consideration for parole. In our view, meaningful consideration for parole consists of more than a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement." Id.
 {¶ 39} Ultimately, the Layne court held that in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. Layne at ¶ 28. Because the APA improperly assigned an offense category score equivalent to the offense in the indictment, rather than the offense of conviction, the Supreme Court of Ohio concluded that the APA and the parole board breached the plea agreement, and that case was remanded to the trial court for further proceedings. Id.
 {¶ 40} Turning to the instant matter, we note as dicta that the state breached appellant's plea agreement. Contrary to the state's arguments, the parole board and the APA were bound by the plea agreement. See, e.g., Layne at ¶ 25, citing Randolph at 8-9, (Agents of the state are bound by plea agreements.). See, also, State v. Barnett (1998), 124 Ohio App.3d 746, 755.
 {¶ 41} Appellant's signed guilty plea does not mention parole eligibility, and it simply states that he was pleading guilty to three counts of rape knowingly, voluntarily, and intelligently. However, it is apparent from Layne that, even if a defendant pleaded guilty to a lesser offense before the imposition of the new parole guidelines, and regardless of whether parole eligibility was outlined by the plea agreement, a defendant has an expectation that he will be assigned an offense category score consistent with his conviction and plea, rather than the charge(s) included within the indictment. Layne at ¶ 27.
 {¶ 42} Appellant is correct in arguing that Layne is applicable to this matter. Appellant was indicted on three counts of rape, in violation of R.C. 2907.02(A)(1)(b) and (A)(2), and R.C. 2907.02(A)(2) contained a force specification. Appellant pleaded guilty to three counts of rape, in violation of R.C.2907.02(A)(1)(b), with no force specification attached. At the time of his plea agreement, R.C. 2967.13(A) provided that a prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed "becomes eligible for parole at the expiration of his minimum term," less time off for good behavior. Despite this, the parole board classified appellant as a Category 10 offender, indicating that he raped a victim under the age of sixteen, by force or thethreat of force. Accordingly, appellant's parole eligibility time was increased from eighty months to an extra 120 to 180 months, and his parole eligibility was summarily denied because the parole board determined he was not yet actually eligible for parole.
 {¶ 43} Convictions for rape, with no force specification, are violations of R.C. 2907.02(A)(1)(b) and do not correlate with an offense Category 10. According to the new parole guidelines, appellant should have been classified as a Category 9 offender, and it was error to increase appellant's parole eligibility time. Following the logic set forth in Layne, the APA and the parole board clearly erred, and the state breached the plea agreement.
 {¶ 44} At this point, we note that this conclusion does not conflict with Layne. When assigning an offense category to an inmate, a parole board is limited to the score that corresponds with the offense of which the inmate was convicted. Id. at syllabus. Thus, when the parole board assigned appellant's offense classification, it was limited to the score corresponding to a conviction of R.C. 2907.02(A)(1)(b), rather than the charges set forth in the indictment. However, a parole board may "consider all relevant facts and circumstances, including the offenses set out in the indictment, as well as any circumstances surrounding the offense" when actually considering a defendant for parole. Layne at ¶ 25. In the instant matter, the parole board did not have such discretion. It never reached this second step because it assigned an offense classification to appellant, determined his parole eligibility, and concluded that he was not eligible for any parole consideration at that time.
 {¶ 45} It is also apparent that appellant's motion is not barred by the doctrine of res judicata. Ordinarily, res judicata may bar the consideration of any claim that was raised or could have been raised in an earlier appeal. See, e.g., State v.Szefcyk, 77 Ohio St.3d 93, 1996-Ohio-337, syllabus; State v.Awan (1986), 22 Ohio St.3d 120, syllabus, (holding that the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal"). However, this matter is not barred by res judicata because it was only after the Layne decision that appellant had an actual remedy to challenge his classification. Further, appellant was not represented by counsel throughout the relevant portions of the proceedings.
 {¶ 46} In the instant matter, acting pro se, appellant filed various motions to withdraw his plea and petitions to vacate his sentence and/or to withdraw his plea. Some of these motions were filed prior to his 1998 parole hearing and did not bar the motion sub judice; only after the parole board assigned him as a Category 10 offender did appellant have actual standing to argue that the state breached his plea agreement. After the parole board assigned him as a Category 10 offender, appellant filed two motions to withdraw his plea, one on September 18, 1999 and another on September 14, 2001. Both motions were denied.[4]
 {¶ 47} A careful review of appellant's September 18, 1999 motion is crucial to the instant matter. In that motion, appellant did not specifically argue that the state breached his plea agreement. Instead, appellant argued ineffective assistance of counsel and that his plea was not knowing and voluntary. He was granted leave, and he supplemented his motion.
 {¶ 48} In the supplement, appellant specifically argued that the state, in the form of the APA and the parole board, breached his plea agreement via its application of the parole guidelines to his situation. In a November 9, 2000 judgment entry, the trial court stated that it reviewed the motion and its supplement, and then the court denied the motion without a hearing. Appellant, again acting pro se, appealed that judgment to this court in a delayed appeal on February 7, 2001, and we dismissed the appeal for failure to prosecute on May 24, 2001.
 {¶ 49} It has been held, in a criminal context, that a reviewing court's dismissal of an appeal for want of prosecution is an adjudication on the merits that bars an appellant from raising the claim again. See, e.g., State ex rel. Sliman v.Strongsville Mayor's Court (Apr. 15, 1999), 8th Dist. No. 75136, 1999 Ohio App. LEXIS 1680, at 12; State v. Pasqualone (2000),140 Ohio App.3d 650, 658. This concept is also well-grounded in the civil context. The Supreme Court of Ohio held in Ameigh v.Baycliffs Corp., 81 Ohio St.3d 247, 256, 1998-Ohio-467, that "[r]es judicata attaches when a case is dismissed for failure to prosecute." See, also, Civ.R. 41(B); State ex rel. SuperAmericaGroup v. Licking Cty. Bd. of Elections, 80 Ohio St.3d 182,1997-Ohio-347; Rice v. Westlake (June 15, 1989), 8th Dist. No. 55424, 1989 Ohio App. LEXIS 2365.
 {¶ 50} In the instant matter, the state, via the parole board, clearly breached the plea agreement by assigning appellant an offense score based on the alleged underlying criminal activity rather than on the offense for which he was convicted. To appellant's detriment, the Layne decision was not issued until after his first motion to withdraw his plea based on an alleged breach of his plea agreement. However, in filing his pre-Layne motion and putting forth the same arguments which were later validated in Layne, appellant was on the cutting edge of Ohio jurisprudence at the time. Appellant's second motion to withdraw his plea, based on an alleged breach of his plea agreement, proffered the same arguments contained within appellant's first motion. However, appellant's second motion relied on, and was supported by, the recently-issued opinion inLayne. Applying the doctrine of res judicata would be inappropriate in this matter. State v. Murnahan (1992),63 Ohio St.3d 60, 66, (A court may decline to apply res judicata if the circumstances render the application of the doctrine unjust.).
 {¶ 51} Further, res judicata only applies when a defendant was represented by counsel in the earlier proceeding. See, e.g.,State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. In the instant matter, appellant acted pro se when filing his September 18, 1999 motion to withdraw his plea, and appellant was also not represented by counsel in his appeal from the trial court's denial of that motion. Citing new authority from the Supreme Court of Ohio, appellant, still acting pro se, again moved to withdraw his plea on June 25, 2003. After the trial court denied this motion, appellant appealed to this court, again unrepresented by counsel. We dismissed that appeal for failure to prosecute. Although a dismissal for failure to prosecute would ordinarily bar a defendant from raising that claim again, we must follow Szefcyk and Perry and conclude the instant matter is not barred by res judicata because appellant was acting pro se throughout the relevant parts of the proceedings.
 {¶ 52} Accordingly, the trial court erred by applying the doctrine of res judicata to bar appellant's motion to withdraw his plea in the instant matter. Appellant's motion was not barred by res judicata because only after the Layne decision did he have a remedy by which to challenge his classification by the parole board. Further, appellant was unrepresented by counsel throughout the relevant portion of the proceedings, precluding the application of the doctrine.
 {¶ 53} We now address whether a motion to withdraw a plea was a proper remedy in this situation. The Supreme Court of Ohio held in Hattie that "[a] declaratory judgment is the proper remedy to determine the constitutionality or constitutionalapplication of parole guidelines." (Emphasis added.) Id. at 235. Various lower courts have followed this logic, specifically holding that a mandamus or a declaratory judgment action may be a more appropriate remedy if the appellant contends that the APA has breached the plea agreement. For example, the First District Court of Appeals has held that the remedy of a claimed breach of a plea agreement by the APA "`is not to unravel his plea bargain which, if it were done[,] would subject him to the risk of a new indictment * * * and the possibility of a longer sentence. * * * [A defendant's] remedy is to enforce the plea bargain.'" Statev. Stephens, 1st Dist. No. C-020683, 2003-Ohio-6193, at ¶ 8, quoting State v. Young (Aug. 18, 2000), 2d Dist. No. 2000 CA 26, 2000 Ohio App. LEXIS 3714. See, also, Calhoun, at ¶ 8, citing Young; State v. Kelly (Mar. 30, 2001), 2d Dist. No. 18170, 2001 Ohio App. LEXIS 1471, at 5, citing Young.
 {¶ 54} "An action for a declaratory judgment pursuant to R.C. Chapter 2721 is a civil action * * *." (Emphasis added.)Sterling Drug, Inc. v. Wickham (1980), 63 Ohio St.2d 16, 21. As such, appellant's motion to withdraw his plea as a part of thiscriminal matter is not a proper remedy to challenge the constitutionality of parole guidelines as applied or to compel the parole board to comply with Layne. Although the parole board is an agent of the state, and bound by the plea agreement, the parole board is not a party in this criminal matter. The trial court had no authority over the parole board. A civil declaratory judgment action is the proper remedy in this instance, and proper jurisdiction would be in Franklin County or Lorain County, Ohio.
 {¶ 55} We also note that the substance of appellant's motion clearly indicates he did not wish to withdraw his plea per se, but instead he wanted to compel the parole board to classify him pursuant to Layne. Indeed, the trial court could have looked to the substance of appellant's motion, construed it as a declaratory judgment action, and filed it as a separate complaint.
 {¶ 56} Even if appellant's motion were construed in this way and filed as a separate complaint for a declaratory judgment, appellant's argument still fails. R.C. Chapter 2721 granted courts in Ohio jurisdiction to grant declaratory judgments.Malloy v. Westlake (1977), 52 Ohio St.2d 103, 105. The Malloy
court held that failure to serve the Attorney General under R.C.2721.12 with a copy of the proceeding in a declaratory judgment action challenging the constitutionality of a statute precludes a trial court from rendering declaratory relief. Id. As such, appellant's failure to serve the Attorney General with a copy of his "complaint" for a declaratory judgment precluded the trial court from granting the relief essentially requested in appellant's motion.
 {¶ 57} Accordingly, pursuant to Hattie, a declaratory judgment action is a proper remedy in this instance. Even if we construe appellant's motion to withdraw his plea as a separate complaint for a declaratory judgment, the "complaint" must be dismissed due to appellant's failure to serve the Attorney General.
 {¶ 58} In summary, while we agree with the trial court's ultimate disposition of appellant's motion, the trial court's reasoning and analysis was flawed. Appellant's claim is not barred by res judicata, and the APA and the parole board clearly erred by assigning appellant as a Category 10 offender. However, appellant's motion to withdraw his plea is not a valid remedy to challenge the constitutionality of the parole guidelines as applied and to compel the parole board to classify him pursuant to Layne. Accordingly, we hereby affirm the judgment of the trial court.
Ford, P.J., Rice, J., concur.
[1] According to the new parole guidelines, Category 10 may be assigned to a rape offender if: (1) serious bodily injury results; (2) the victim is raped by more than one offender; (3) the victim is less than sixteen years of age and the offense is committed by force or threat of force, or by administering any drug/intoxicant surreptitiously or by force, threat of force, or deception; or (4) the victim is kidnapped to facilitate the offense."
[2] This is as stated in appellant's appellate brief. According to R.C. 2967.13, as in effect at the time of appellant's plea, "* * * a person serving a sentence for felony becomes eligible for parole consideration after serving his minimum sentence less time off for good behavior * * *." Accordingly, that version of R.C.2967.13 provided that appellant would have been eligible for parole after ten years of imprisonment, less time off for good behavior. According to the APA's "Good Time Reduction Chart," appellant's earliest possible release would have been at eighty months. Thus, appellant's contention seems correct.
[3] The parole board concluded that an upward departure of 180 to 240 months was warranted before appellant would be eligible for parole. Because appellant had already served approximately eighty months, appellant was not eligible for parole until an extra 120 to 180 months of imprisonment had passed.
[4] In appellant's September 14, 1999 motion to withdraw his plea, he alleged ineffective assistance of counsel and that his plea was not voluntary because it was entered when he was under the effect of "mind altering drugs." The trial court found no credibility in appellant's assertions, determined that he had not established a manifest injustice, and denied his motion on October 1, 2001. Appellant appealed to this court, and we affirmed the trial court's judgment on September 6, 2002.Hall.