THE STATE OF OHIO, APPELLEE, *v.* URVAN, APPELLANT.

(No. 43612—Decided June 3, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. John W. Hickey,* for appellant.

DAY, J. This is an appeal by defendant-appellant, Steven Urvan (defendant), from the refusal to dismiss a charge of grand theft. The ground for the motion was double jeopardy.

The judgment is reversed and the defendant discharged.

## I

### A

In June 1979, Woodhill Permatex Corporation, 18731 Cranwood Parkway, Warrensville Heights, Ohio (Permatex), contacted the Warrensville Heights Police Department about the internal thefts of its products. Two months later, William Strawbridge of Bonaventure Corp. (Bonaventure) was hired by Permatex to investigate the thefts. By Labor Day weekend, Strawbridge had narrowed his investigation to the shipping department and to the defendant.

On three or four weekends in September 1979, Strawbridge observed the defendant and his family selling Permatex products from his van at a flea market in Summit County. During the last weekend of the month, a Warrensville Heights police officer accompanied several investigators from Bonaventure to defendant's home in Medina County on the pretext of purchasing horses. The visit revealed that there were Permatex products on the defendant's property.

A Medina County judge issued a search warrant for defendant's home and "surrounding curtilege [*sic*]" on October 1, 1979. It was executed that day by officers from the Hinckley and Warrensville Heights police departments. Permatex products were seized.

On October 2, 1979, defendant's office at Permatex was searched by employees of Bonaventure. The employees found bills of lading to several companies. Later that day, defendant was arrested and released on his own recognizance.

On October 10, 1979, Warrensville Heights police recovered a small quantity of Permatex products from the docks of ICX[1] in Cuyahoga County. Five days later, twenty-one skids and eighty cartons of Permatex products worth approximately $30,000, were recovered from the docks of the Ryder Trucking Company in Cuyahoga County. These products allegedly had been placed there prior to October 1, 1979.

The Medina County prosecutor filed an Information in case No. 6497 on November 13, 1979, charging that the defendant received stolen property, valued at $150 or more, on October 1, 1979, in violation of R.C. 2913.51(A).[2]

---

[1] Search failed to turn up a sure title for this entity. Hence the use throughout the opinion of the symbol "ICX."

[2] "(A) No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

"(B) Whoever violates this section is guilty of receiving stolen property, a misdemeanor of the first degree. If the value of the property involved is one hundred fifty dollars or more, or if the property involved is any of the property listed in section 2913.71 of the Revised Code, or if the offender has previously been convicted of a theft offense, receiving stolen

Defendant was arraigned on November 19, 1979, and entered a plea of not guilty.

By journal entry filed December 6, 1979, defendant's case was deactivated by the Medina County Court of Common Pleas. Defendant was placed in a pretrial diversion program authorized under R.C. 2935.36.[3]

## B

The Medina County first offender diversion program was headed by Dr. Ross Santamaria. Referrals to the program were made by the prosecutor's office and had to be approved by the presiding judge. Dr. Santamaria relied strictly on the information provided him by the Medina County prosecutor's office when he determined whether to set up an initial appointment for a candidate for the program.

In late December 1979, or early January 1980, Detective Stephen Hatras, Warrensville Heights Police Department, called the Medina County prosecutor's office after learning that the defendant had "possibly been referred to the first offender program." The prosecutor's office referred Hatras to Dr. Santamaria. Hatras testified that he told Dr. Santamaria about the recovery of $30,000 worth of products on October 10th and 15th. There was also evidence that Santamaria had been told of the seizure by

Hatras in December 1979 or January 1980. Hatras did not present the information to the prosecutor.

Dr. Santamaria had his first appointment with the defendant on January 23, 1980. He signed the contract for diversion with the defendant on March 5, 1980. Neither the Medina County prosecutor nor defense counsel signed. Although only receiving had been charged, the offenses listed on the contract were grand theft and receiving stolen property. Dr. Santamaria acknowledged that the contract had been typed up prior to his receiving any material from the Medina County Court of Common Pleas. However, Dr. Santamaria received a copy of the Information sometime after January 23, 1980, and the diversion contract was signed on March 5, 1980.

This means the state's agent, Dr. Santamaria, prepared and secured the execution of the diversion agreement in his official capacity as head of the Medina County Pretrial Diversion Program *after* he had an opportunity to review the defendant's file sent to him from the prosecutor's office and *after* he had been informed of the seizures in Cuyahoga County.

The second to last paragraph of the diversion contract provided:

"As final terms of this contract, I have been assured by all signers of this

---

property is a felony of the fourth degree. If the property involved is a motor vehicle, as defined in section 4501.01 of the Revised Code, receiving stolen property is a felony of the third degree."

[3] The objective is a release program to permit first offenders in specified categories to demonstrate reform and avoid the stigma of a record. Note, An Analysis of State Pretrial Diversion Statutes, 15 Colum. J. of L. & Soc. Problems 1 (1979).

The program may be adopted by a county prosecutor and operated pursuant to standards approved in a journal entry of the common pleas court. The offender must be deemed an

improbable repeater by the prosecutor, R.C. 2935.36(A). Entry into the program is conditioned upon the offender's waiving in writing certain specified rights, including speedy trial and all applicable periods of limitation whether established by statute or rule of court. The waivers are contingent upon successful completion of the program. A participant is also required to agree in writing to conditions prescribed by the prosecutor, R.C. 2935.36(B). Victims and arresting officers must be given the opportunity to object in writing to the accused taking part in the program before it begins, R.C. 2935.36(C). Successful completion results in a dismissal of the charge or charges, R.C. 2935.36(D).

document that successful fulfillment of the terms outlined above will result in nolle of the charges specified herein. Further, it is my understanding that required journal entries and court proceedings will be handled within thirty days of program completion, and *at no time thereafter will I be subject to arbitrary prosecution or additional court appearances on charges covered by this agreement."* (Emphasis added.)

## C

Defendant completed the pretrial diversion program on June 11, 1980. Dr. Santamaria recommended to the court that the charge in the Information be nolled. On June 18, 1980, it was. The *nolle prosequi* was entered on the only charge made, *i.e.,* reception of stolen property (R.C. 2913.51[A]).[4]

## D

While preparing his final report on July 7, 1980, Dr. Santamaria talked to the Medina County prosecutor and then crossed out the grand theft charge in the diversion contract. Defendant testified that he understood both charges were pending at the time he entered the diversion program. The unilateral attempt to amend the contract to eliminate grand theft came after the nolle of the receiving charge. One issue is whether the discrepancy between the Information and the diversion contract is fatal to defendant's claim of double jeopardy.

## E

Defendant was indicted in Cuyahoga County on June 25, 1980, in case No. 56729. The charge was grand theft, value $150 or more, in violation of R.C. 2913.02.[5] According to Detective Hatras, the basis of the indictment was the Permatex products found on the docks of ICX and Ryder Trucking Company on October 10 and 15, respectively.

On July 11, 1980, defendant was arraigned in Cuyahoga County and entered a plea of not guilty. A motion to dismiss on the grounds of double jeopardy was filed October 22, 1980, and overruled on February 27, 1981, but not filed for journalization until March 9, 1981.

Defendant appealed assigning one error:

"The trial court erred in finding the Double Jeopardy Clause of the Fifth Amentdment [*sic*] not applicable where the defendant has entered into a contractual agreement with the prosecutor the completion of the terms of which agreement bars further prosecution, where the materials pertinent to a subsequent indictment were part of the subject material of the charges nolled, and where subsequent authority had completed their investigation prior to and had knowledge of

---

[4] The statute has since been amended but not in any particular affecting the disposition of this case.

[5] "(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1)  Without the consent of the owner or person authorized to give consent;

"(2)  Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3)  By deception;

"(4)  By threat.

"(B)  Whoever violates this section is guilty of theft. If the value of the property or services stolen is less than one hundred fifty dollars, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is one hundred fifty dollars or more, or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, or if the offender has previously been convicted of a theft offense, a violation of this section is grand theft, a felony of the fourth degree. If the property stolen is a motor vehicle, as defined in section 4501.01 of the Revised Code, a violation of this section is grand theft of a motor vehicle, a felony of the third degree."

defendant's being placed on the First Offender Program."

For reasons adduced below, the assignment has merit.

## II

In a jury trial jeopardy attaches when the jury is sworn, see *Sander* v. *Ohio* (S.D. Ohio 1973), 365 F. Supp. 1251, 1253. When trial is to the bench, jeopardy is put in place with the swearing of the first witness.[6] A nolle before jeopardy does not preclude a second prosecution for the same offense, *Sander* v. *Ohio, supra.*

A denial of a motion to dismiss on grounds of double jeopardy is a final appealable order. *State* v. *Thomas* (1980), 61 Ohio St. 2d 254, 258 [15 O.O.3d 262].

## III

For the purpose of this opinion, including double jeopardy dispositions,[7] the state will be considered as a single entity whether acting through one or the other of its subordinate units, *i.e.,* Medina or Cuyahoga Counties. However, before reaching the double jeopardy question there are related issues of venue to appraise.

## IV

When several offenses are committed in this state in different jurisdictions as "part of a course of criminal conduct" the venue may be lodged for all the offenses in any one jurisdiction where "one such offense or any element thereof occurred."[8]

It is clear that the offense or offenses involved in this case occurred at least in some part in both Medina and Cuyahoga Counties. Therefore it is clear that jurisdiction could be exercised by either county. It is significant for the present disposition that Medina County acted first and assumed the agency for Ohio in pursuing the defendant. It is also of moment that Medina County had an early diversionary program under the optional statute and Cuyahoga County did not.

---

[6] *Serfass* v. *United States* (1975), 420 U.S. 377, 388, is cited in fn. 15 of *Crist* v. *Bretz* (1978), 437 U.S. 28, 37, for the proposition that jeopardy attaches in nonjury cases when the first witness is sworn. This seems a reasonable interpretation of the exact language of *Serfass* which is, "In a nonjury trial, jeopardy attaches when the court begins to hear evidence." See, also, Annotation, When Does Jeopardy Attach in a Nonjury Trial?, 49 A.L.R.3d 1039.

[7] "As the Ohio Court of Appeals recognized, the Wickliffe [Lake County] and Cuyahoga County prosecutions must be viewed as the acts of a single sovereign under the Double Jeopardy Clause. *Waller* v. *Florida,* 397 U.S. 387 (1970)," *Brown* v. *Ohio* (1977), 432 U.S. 161, 164, fn. 4 (material in brackets added).

[8] R.C. 2901.12, venue:

"(C) *When the offense involved the unlawful taking or receiving of property* or the unlawful taking or enticing of another, *the offender may be tried in any jurisdiction from or into which the property* or victim *was taken, received, or enticed.*

"\* \* \*

"(H) *When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all such offenses in any jurisdiction in which one such offense or any element thereof occurred.* Without limitation on the evidence which may be used to establish such course of conduct, any of the following is *prima facie evidence of a course of criminal conduct*:

"(1) The offenses involved *the same victim,* or victims of the same type or from the same group.

"(2) *The offenses were committed by the offender in his same employment, or capacity, or relationship to another.*

"(3) *The offenses were committed* as part of the same transaction or chain of events, or *in furtherance of the same purpose or objective.*

"(4) The offenses were committed in furtherance of the same conspiracy.

"(5) *The offenses involved the same or a similar modus operandi.*

"(6) The offenses were committed *along the offender's line of travel in this state,* regardless of his point of origin or destination." (Emphasis added.)

The defendant was charged by Information with receipt of stolen property in Medina County. Under an agreement with that county he completed an early diversionary program. However, since Medina County had subject matter jurisdiction and took action first, by acting as it did, it preempted venue and jurisdiction for the whole matter unless the state has authority to divide and distribute responsibility for prosecuting each of several crimes among its county agencies. It does not, *Brown* v. *Ohio, supra.* And even if the actions could be split only one could be fully pursued. For the Supreme Court of Ohio has said:

"Although receiving is technically not an included offense of theft, it is, under R.C. 2941.25, an 'allied offense of similar import.' An accused may be tried for both but may be convicted and sentenced for only one. The choice is given to the prosecution to pursue one offense or the other, and it is plainly the intent of the General Assembly that the election may be of either offense."[9]

Thus, when Medina County took jurisdiction, that county elected to charge defendant only with the receipt of stolen property and by doing so elected on behalf of the state to pursue only one of the two allied offenses involved, *i.e.,* receipt of stolen property rather than grand theft.

Medina County also chose to put the defendant into the early diversion program which, under R.C. 2935.36, that county had opted to install. The purpose of the diversion program is, of course, to effect rehabilitation without the stigma of guilt. However, any view of diversion processes not at war with their purposes must include a conception of them (when successfully completed) as the equivalent of served or probated time with consequent expiation of the crime.[10]

In this case when the state, through its agent Medina County, chose early diversion for the defendant and when he satisfied the terms of the program, he was entitled to receive and did receive a nolle of the charge to which the agreement applied. Moreover, if the program is to make logical sense and traffic at all in fair treatment, the state's election to pursue the crime of stolen property forecloses its right to undertake pursuit of the grand theft charge through a second agent (Cuyahoga County). Jeopardy must attach as a result of the activity of the first (Medina County). This conclusion comports both with fairness and the double jeopardy mandate of *Brown* v. *Ohio, supra.*

Deliberate splitting up of the crime of internal theft from Permatex followed by successive prosecution from county to county is one exemplification of the hazard the Double Jeopardy Clause was designed to prevent. Negligence or oversight on the part of Cuyahoga County does not legalize the consequences.

On the facts here the defendant's hazard is as real if caused by negligence as it would be if caused intentionally. For his liberty was invaded while he was in the diversion program. To participate he had to agree to the terms established by the prosecuting attorney on behalf of the

---

[9] *Maumee* v. *Geiger* (1976), 45 Ohio St. 2d 238, 244 [74 O.O.2d 380].

[10] Under a comparable statutory program, but not identical statute, the Supreme Court of Tennessee has said:

"[P]re-trial diversion is not a mere extension of the charging process. The statutory scheme may not be invoked until after indictment. The plan of diversion, or the denial thereof, *follows* indictment and comes after the prosecutor has fully discharged all discretionary functions and after the prosecutorial die has been cast.

"* * *

"It is judicial in character in that it involves a procedural alternative to prosecution and a disposition by normal methods." *Dearborne* v. *State* (Tenn. 1978), 575 S.W. 2d 259, 263-264.

state of Ohio at the risk of facing trial on the diverted charge. Moreover, he had to waive such substantive rights as constitutional and statutory speedy trial.[11] And he contends, not without reason, that he thought he was clearing both charges.[12]

## V

If pretrial diversion programs are to be effective, the state must live up to its agreements. It cannot avoid its obligation by splitting responsibilities between its agencies and pretending that it acts disparately. What it knew and did in Medina County through its agent it knew in legal contemplation in Cuyahoga County and was bound in both places by applicable federal and state[13] constitutional principles.

Here the state is attempting to pursue separate charges stemming from one course of criminal conduct in different counties in either of which the venue could be laid. Whether the state acts by design or inadvertence makes no difference. The law condemns both. For the effect is to harass the defendant and frustrate statutory policy.

## VI

It may seem a novel idea to some, but it is not far-fetched to conclude that success in a diversion program is the constructive equivalent of serving a sentence for the crime charged. Any possible question stemming from the state's failure to include another available charge is resolved by the allied offense statute which requires an election between convictions for allied offenses when the state chooses to pursue both. It is not a giant step to im-

---

[11] It is unnecessary to address the question of the application of the Ohio speedy trial statutes to this case. The ground upon which disposition rests is a different one. However, it is noted that should the grand theft charge be deemed still viable and available to the state as a ground for prosecution because not included in the amended diversionary contract in consequence of the post-execution excision by the state, then the speedy trial statutes would be arguably available and since the Information in this case was filed on November 13, 1979, and defendant was arraigned on November 19, 1979, it is clear that his arrest pre-dated the latter date beyond any question. Thus, the speedy trial period of two hundred seventy days began to run with the defendant's arrest for crimes associated with the same course of criminal conduct and the two hundred seventy-day period of R.C. 2945.71 had long since expired by October 22, 1980 when the motion for dismissal on double jeopardy grounds was filed. This is so even if the defendant spent no time in jail with entitlement of a three-for-one count in computing days for the statutory purposes.

[12] Although the case was deactivated December 6, 1979, the diversion contract was not executed until March 5, 1980. Urvan testified, "it was my understanding that both of those charges were being applied when I entered into the program." Dr. Santamaria acknowledged that grand theft and receiving stolen property were the charges on the contract which the defendant signed. He also testified that he regarded it as all one incident and had discussed it with the prosecutor after the Warrensville police contacted him.

The record is not clear as to when, if ever, prior to July 7, 1980, Dr. Santamaria knew that the prosecutor understood the diversion program to apply only to the charge of receiving stolen property. Santamaria testified that when Urvan completed the program he, Santamaria, wrote a report June 11 with recommendations.

On July 7, twenty-six days later, after Urvan had received notice about his indictment in Cuyahoga County, Dr. Santamaria testified that he was working on a final report and had to phone the prosecutor to determine what charges had been the subject of the diversion program and the nolle recommended.

This testimony of the state's administrator of the program is consistent with Urvan's testimony that at the time the diversion contract was made it applied to both charges.

[13] "* * * No person shall be twice put in jeopardy for the same offense," Section 10, Article I, Constitution of Ohio.

pose the same consequences when the election is before conviction.

For the state to be allowed to split venue and bring a second prosecution on a charge (which at best the state had deliberately elected not to pursue[14]) after all the terms of the diversion contract have been met, violates the spirit and the letter of constitutional Double Jeopardy policy and the spirit of the legislative policy of the state as represented in the venue and allied offense statutes.

### VII

The judgment is reversed and the defendant discharged.

*Judgment reversed and defendant discharged.*

JACKSON, C.J., and CORRIGAN, J., concur.

---

[14] At worst one might conclude the defendant had been misled into signing the diversionary agreement. See fn. 12, *supra.*