Michael Dane, Cleveland, Ohio, for petitioner.

Alexander G. Thomas, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## ORDER

BATTISTI, Chief Judge.

On September 14, 1981, petitioner filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] His petition challenged his 1978 state court conviction on two counts of robbery under Ohio Revised Code § 2911.02 on three grounds: violation of the Fifth Amendment right against double jeopardy, violation of the right to effective assistance of counsel and violation of Ohio's statutory speedy trial right. On February 25, 1985, Magistrate Jack B. Streepy filed his report and recommended the petition be denied. Petitioner filed objections to the Magistrate's Report on March 4, 1985. The case comes before this court to review the Magistrate's decision.

---

1. Although petitioner was paroled from the Chillicothe Correctional Institute on September 1, 1983 and was released from parole on October 10, 1984, the fact that petitioner was on parole involves the type of restraint on liberty which satisfies the "custody" requirement for habeas corpus jurisdiction. *See Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

784

## II.

On June 2, 1978, petitioner and a female accomplice attempted to steal cigarettes from a grocery store in Cuyahoga County, Ohio. They were interrupted and fled the store. At a nearby gas station, petitioner stole a 1970 Plymouth Valiant by forcing the driver out. Petitioner and his accomplice were able to get away.

On July 20, 1978, petitioner and an accomplice were caught in a department store in Lake County while attempting to steal some dresses. They had arrived at the department store in the same Plymouth Valiant which had been stolen on June 2, 1978.

Petitioner was indicted in both Lake and Cuyahoga Counties. In Cuyahoga County, petitioner was charged with committing a theft involving a car and using force against the driver thereby violating Ohio Revised Code § 2911.02. The Cuyahoga County indictment was filed on September 20, 1978.

In Lake County, petitioner was charged with receiving or retaining an automobile knowing it to have been obtained through a theft in violation of Ohio Revised Code § 2913.51. The Lake County indictment was filed September 13, 1978.

The Lake County indictment, although concerning a criminal act which occurred later, was tried first. The prosecution presented the testimony of the car owner and one eyewitness to the June 2nd robbery to establish that the Plymouth Valiant had been stolen. Neither witness was asked to identify the individual who had stolen the car; the eyewitness said she would not be able to identify the individual who stole the car. The defendant-petitioner did not dispute the claim of theft. He testified that he was in the stolen car on July 20. At the time of his arrest, he had the keys to the car in his possession. However, petitioner claimed the car had been driven to the department store by a Buster Lee. Defendant-petitioner admitted that he had driven the car on the previous day and since Buster Lee said he [Lee] owned the car, petitioner had no knowledge the

car had been stolen. The Lake County jury acquitted petitioner of the charge of receiving or retaining stolen property.

Petitioner was subsequently tried in Cuyahoga County surrounding the event of June 2. Numerous eyewitnesses identified petitioner as the individual who forced the driver out of the car and drove it away. Petitioner was convicted on two counts of violating O.R.C. § 2911.02.

## III.

## DOUBLE JEOPARDY CLAIM

■ Petitioner claims that since he was acquitted in Lake County of receiving or retaining an automobile he knew was stolen, the state is collaterally estopped from trying him in Cuyahoga County on the charge of committing a theft involving a car and using force against the driver. Petitioner relies on *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) wherein the Court held that the Fifth Amendment double jeopardy clause embodies collateral estoppel as a constitutional requirement. *Id.* at 445, 90 S.Ct. at 1195. The magistrate's report correctly sets out the test applied by the *Ashe* court to determine whether there is a violation of double jeopardy:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948).

■ For double jeopardy purposes the state will be considered a single entity acting through subordinate units, namely the counties. *Brown v. Ohio*, 432 U.S. 161,

164 n. 4, 97 S.Ct. 2221, 2224 n. 4, 53 L.Ed.2d 187 (1977); *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). The burden is on the defendant to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict. *United States v. Cala,* 521 F.2d 605, 608 (2d Cir.1975). Therefore, this Court must determine whether the jury's verdict in Cuyahoga County could have been based on an issue other than that which was decided in petitioner's favor in Lake County.

An examination of the charges themselves is a good starting point. The Lake County indictment was under Ohio Revised Code section § 2913.51, entitled "Receiving Stolen Property" which states:

(A) No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property had been obtained thorough commission of a theft offense.

The Cuyahoga County indictment was under Ohio Revised Code section 2911.02, entitled "Robbery," which states:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 [2] of the Revised Code, or in fleeing immediately after such attempt or offense, shall use, or threaten the immediate use of force against another.

As the Magistrate correctly notes, the common element in the two offenses is the commission of a theft. However, the critical difference is that under § 2913.51 the individual need not have been involved in the actual commission of the theft offense at all; he simply needs to know the property was stolen.

It is instructive to examine the cases cited by petitioner. In *Ashe,* the defendant was charged with the armed robbery of each of six poker players and the theft of a car. In May 1960, the defendant was tried on the charge of robbing one of the poker players. The defense offered no testimony Nonetheless, the jury found the petitioner "not guilty due to insufficient evidence." *Id.* 397 U.S. at 438–39, 90 S.Ct. at 1191–92. Six weeks later, the petitioner was tried again, this time for the robbery of another poker player. This time the jury found the petitioner guilty. *Id.* at 440, 90 S.Ct. at 1192. The Court stated that "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be relitigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. The Court concluded:

For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that [the chief witness] had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. . . . once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery . . . in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery.

*Id.* at 445–46, 90 S.Ct. at 1195.

The Magistrate analogizes the instant case with *United States v. Cala,* 521 F.2d 605 (2d Cir.1975). In *Cala,* 521 F.2d 605 (1975), defendant was arrested and charged with possession of approximately $160,000

---

**2.** O.R.C. § 2913.02, entitled "Theft," states

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat.

in counterfeit currency. He was indicted under 18 U.S.C. § 472 which prohibits possession of counterfeit currency "with intent to defraud." At defendant's trial in January 1973, in the Central District of California, he admitted possession of the counterfeit notes but that he had innocently received the money from an unknown source. He was acquitted. On September 5, 1973, defendant was indicted in the Western District of New York for transferring and delivering $200,000 in counterfeit bills with the intent that they be used as genuine Federal Reserve Notes (in violation of 18 U.S.C. § 473) and conspiring to transfer counterfeit currency with a co-defendant. The counterfeit currency was the same currency for possession of which Cola had been acquitted in California. *Id.* at 606. The jury in the second trial acquitted him of the transport charge but convicted him on the conspiracy count. Defendant contended that the government was collaterally estopped from proving the critical element of intent to defraud since that issue had been resolved in defendant's favor in California. The Court held that there was no such preclusion since the indictments and trials involved separate crimes relating to a different time period. *Id.* at 608. Furthermore, the evidence introduced by the parties was "for the most part confined to its separate time period." *Id.* As the Court stated, "... the significant fact is that the second trial did not amount to a rehash of the evidence presented at the first trial, but was devoted to proof of a different crime involving different evidence.... in the present case not only are the offenses different but they do not arise out of the same transaction." *Id.* at 609.

As to the instant case, in the first trial in Lake County, the issue the jury was faced with was whether (1) petitioner tried to steal dresses on July 20, 1978 and (2) whether petitioner knew the car he possessed on July 20, 1978 was stolen. The Cuyahoga trial required the prosecution to show (1) that petitioner was involved in a theft offense and (2) that he used or threatened the use of force against another on June 2, 1978, both in the grocery store and

regarding the car. Judge's Instructions, Cuyahoga County Tr. at 213–218.

An examination of the trial transcripts reveals largely separate testimony about two separate events. The Lake County transcript shows the prosecution emphasized the theft of the dresses. The owner of the car testified that it had been stolen. Lake County Tr. 5–15. The second witness, Shelly Goldstein Kabert, merely testified that her sister had been forced out of the car but was not able to specifically identify him. Lake County Tr. at 19. The Cuyahoga County Transcript does include testimony from Lorrie Goldstein and Shelley Kabert (who had testified in Lake County) but the emphasis there was that force was being used on June 2, 1978. As the Magistrate correctly found, the eyewitnesses to the June 2 robbery only testified at the Cuyahoga County trial.

■ Petitioner is correct in noting that *Cala* differs from the instant case since intent and knowledge differ. Petitioner's Objections to Magistrate's Report at 3–4. However, in the instant case, petitioner errs in saying that "the only way Lake County could have proved knowledge and retention by the petitioner was ... by proving that petitioner stole the car and retained it in his possession." Objections, at 4. It was not necessary for the State to prove in Lake County that petitioner stole the car at all; all that was necessary was for petitioner to have used the car knowing it had been stolen. Indeed the jury could have concluded that petitioner was not involved in the June 2nd theft but had been given the car by Buster Lee and unknowingly used it to drive to the mall. However, in the Cuyahoga County trial, the jury was faced with whether defendant himself actually stole the cigarettes or the car and used force in the commission of the theft. In this Court's view, the evidence is sufficiently different and the offenses arise out of different transactions (grocery store robbery on June 2nd, department store robbery on July 20th).

■ Petitioner contends that the state ignored the venue provisions of Ohio Revised Code § 2901.12(H) by splitting its ac-

tions against petitioner in Lake and Cuyahoga County, citing *State v. Urvan*, 4 Ohio App.3d 151, 446 N.E.2d 1161, 4 Ohio Official Reports (1982), 4 Ohio Bar Report 244 (1982). Objections at 4; Supplement to Petitioner's Traverse. However, the two trials or charges in *Urvan* arose out of the same incident, that is the theft of property in Cuyahoga County. Although the charge of receiving stolen property was nolled by Medina County, the grand theft charge in Cuyahoga County involved the identical material. The instant case, however, can be distinguished since two separate transactions are concerned. Whether petitioner actually stole the car was irrelevant in the first trial but was central in the second. The crucial element in *Urvan* was that the court identified the acts as a single "course of criminal conduct." Furthermore, under the Revised Code § 2941.25, receiving is an "allied offense of similar import." "Although an accused may be tried for both he may be convicted and sentenced for only one. The choice is given to the prosecution to pursue one offense or the other, and it is plainly the intent of the General Assembly that the election may be of either offense." *Id.* at 156, 446 N.E.2d 1161.

The Supreme Court has recognized that the doctrine of collateral estoppel is not to be applied across the board to bar subsequent criminal prosecutions. *See e.g., Standefer v. United States*, 447 U.S. 10, 11 n. 16, 100 S.Ct. 1999, 2004 n. 16, 64 L.Ed.2d 689 (1980) ("Nothing in the Double Jeopardy Clause or the Due Process Clause forecloses putting petitioner on trial as an aider and abettor simply because another jury was determined that his principal was not guilty of the offense charged"); *Briddle v. Illinois*, 450 U.S. 986, 101 S.Ct. 1527, 67 L.Ed.2d 823 (1981) (Cf. Brennan, J. & Stewart J. dissent from certiorari denial). Therefore, petitioner's Double Jeopardy claim is denied.

## IV.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ The Magistrate has properly interpreted *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) as to the test to determine whether petitioner has suffered ineffective assistance of counsel. Therefore, petitioner's Double Jeopardy Claim is denied. The petitioner has the burden to show: (1) that counsel's performance was deficient, that his "counsel's representation fell below an objective standard of reasonableness." (104 S.Ct. at 2065) and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

■ It does not appear to this Court in reviewing the transcript that counsel's performance was unreasonable. Although it is true that had counsel raised the double jeopardy claim his client might not have been convicted, that claim could also have been denied. Observing the trial itself, there is no indication that counsel's performance deprived petitioner of a fair trial. While petitioner may complain that the *Strickland* standard is "next to impossible to sustain," the Supreme Court intended to make the standard sufficiently stringent to discourage a "proliferation of ineffectiveness challenges." 104 S.Ct. at 2066. Petitioner has not met his burden in the instant case.

## V.

### STATE RIGHT TO SPEEDY TRIAL

The Magistrate's recommendation that petitioner's third claim, a violation of Ohio's statutory right to speedy trial, be denied for lack of jurisdiction is adopted.

## VI.

After due consideration and review, the Magistrate's Report and Recommendation is adopted; the petitioner for writ of habeas corpus is denied.

IT IS SO ORDERED.