OPINION
{¶ 1} Defendant-appellant Raymar Dumas appeals his conviction and sentence from the Fairfield County Court of Common Pleas on one count of aggravated burglary. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant and James Harris Smith committed a series of robberies that occurred primarily in Franklin County, Ohio. Appellant was later indicted in the Franklin County Court of Common Pleas in Case Number 00 CR 6709 on two counts of aggravated robbery in violation of R.C. 2911.01, felonies of the first degree, two counts of robbery in violation of R.C. 2911.02, felonies of the second degree, two counts of robbery in violation of R.C. 2911.02, felonies of the third degree, and one count of kidnapping in violation of R.C. 2905.01, felonies of the first degree. All of the counts included specifications.
 {¶ 3} On January 5, 2001, appellant entered into an agreement with the State of Ohio, as represented by the Franklin County Prosecutor's Office, in Case Number 00 CR 6709. Pursuant to the terms of the agreement, appellant agreed to cooperate with the Columbus Police Department and the Franklin County Prosecutor's Office in the following manner:
 {¶ 4} "1. Defendant and the State of Ohio (the "State"), agree to abide by the terms and conditions of the proffer letter dated 1-5-2001, and said proffer is considered incorporated as part of this agreement.
 {¶ 5} "2. The Defendant agrees to provide truthful, complete and accurate information in regards to the investigation and will cooperate fully with the CPD [Columbus Police Department] and FCPO [Franklin County Prosecutor's Office].
 {¶ 6} "3. The Defendant agrees to testify in a truthful manner at Grand Jury, if required to do so, and in the prosecution of any other individuals whose identity surfaces in this investigation, and any related civil or criminal proceeding.
 {¶ 7} "4. The Defendant further agrees to testify in a truthful manner in the prosecution of the following individuals: James HarrisSmith. This testimony shall include any and all hearings scheduled, including, trial. This may include any other civil or criminal proceeding related to the incident upon which the indictment is based.
 {¶ 8} "5. The Defendant agrees to have no contact with any individuals potentially or actually targeted in this investigation without the express consent of CPD and/or FCPO."
 {¶ 9} In exchange for appellant's cooperation, the Franklin County Prosecutor's Office agreed that any criminal or civil action taken against appellant would be limited to the following:" As to case number 00 CR 6709, the Defendant shall plead to one count of Robbery (F3),without specification. The State shall dismiss the remaining counts The Defendant will not be prosecuted by the FCPO for any crimes to which his compelled testimony relates, and/or crimes he admits involvement with in any way whatsoever with James Harris Smith." Pursuant to the terms of the agreement, if appellant failed to comply with the same, he would stand trial on the indicted charges.
 {¶ 10} After entering into the above agreement, appellant provided a videotaped statement to the Columbus Police Department in mid-January of 2001 outlining the approximately 30 robberies of fast food restaurants that appellant had committed with Smith during 1999 and 2000. All of the robberies, except one, had occurred in Franklin County, Ohio. The other robbery was of a McDonald's Restaurant in Pickerington, Ohio, which is located in Fairfield County. Appellant, during his questioning by the Columbus Police Department, was specifically asked about the Pickerington robbery. Appellant's statement, along with a sample of appellant's DNA that had been procured by the Columbus Police Department after appellant's arrest on November 15, 2000, and which connected appellant to the Pickerington robbery, was provided to the Pickerington Police Department. The Pickerington Police Department was part of a task force that had been formed to investigate the large number of robberies in jurisdictions around central Ohio.
 {¶ 11} Subsequently, on March 9, 2001, the Fairfield County Grand Jury indicted appellant on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a felony of the first degree, and one count of aggravated robbery in violation or R.C. 2911.01, a felony of the first degree. Both of the counts, which involved the robbery of the McDonald's in Pickerington on August 3, 2000, contained firearm specifications. At his arraignment on August 20, 2001, appellant entered a plea of not guilty to the charges.
 {¶ 12} Appellant, on November 6, 2001, filed a Motion to Suppress and a Motion to Dismiss. Appellant, in his motions, argued that his January 5, 2001, agreement barred the Fairfield County Prosecuting Attorney and the State of Ohio from prosecuting him and from "introducing certain evidence gained" from appellant's confession. Appellant contended that the DNA evidence should be suppressed since it was found only using appellant's allegedly coerced confession and, therefore, was not "derived from a legitimate source wholly independent" from appellant's compelled testimony. In essence, appellant argued that his Motion to Suppress both the DNA evidence and his confession should be granted because his videotaped confession was not a voluntary statement, but was rather coerced. After appellee responded to appellant's motions, a hearing on the same was held on December 18, 2001.
 {¶ 13} As memorialized in a Memorandum of Decision filed on February 28, 2002, the trial court denied both of appellant's motions. The trial court, in its decision, found that the Franklin County Prosecutor "simply has no jurisdiction to affect the prosecution of a crime committed in Fairfield County" and further found that appellant's confession was voluntary. With respect to the confession, the trial court noted as follows:
 {¶ 14} "Here, we have a Defendant who was represented by counsel, both before and during the statement. It is very unusual that a defendant would attempt to suppress a statement that was made with counsel present. Furthermore, the statement was made with the advice of counsel. It is apparent from the negotiated written agreement that the defendant and his counsel were well aware of the benefits of the Defendant's confession, and there are absolutely no facts to support a conclusion that the confession was coerced.
 {¶ 15} "The Court finds that there was no undue pressure, coercion or improper inducement. The Defendant was given the benefit of his bargain, no prosecution by the Franklin County Prosecutor's Office. The Defendant's problem has nothing to do with the police or the prosecutors, his problem arose from his own, and assumably his attorneys, mistake of fact, that Pickerington was in Franklin County and within the jurisdiction of the Franklin County Prosecutor.
 {¶ 16} "Furthermore, the court finds that the confession was voluntary because there simply was no promise made in exchange for the confession. The facts indicate that there were promises made in order to obtain the Defendant's assistance in the Franklin County Prosecutor's investigation and prosecution of James Harris Smith. The part of the confession that is now at issue is not related to the Franklin County Prosecutor's investigation or prosecution of any crime. This confession was outside the realm of the prosecutor and Defendant's bargain. Just as the Defendant's confession to a murder in California would have been outside the agreement.
 {¶ 17} In viewing the totality of circumstances, the Court finds that the statements were made voluntarily as the confession was the product of a rational intellect and free will."
 {¶ 18} The trial court, in its decision, further found that, although it had addressed the merits of appellant's Motion to Suppress, the same had not been timely filed. An entry overruling both of appellant's motions was filed on March 18, 2002.
 {¶ 19} Thereafter, on June 26, 2002, appellant withdrew his former not guilty plea and pled no contest to one count of aggravated burglary. The State then entered a Nolle Prosequi as to the remaining count and the specifications. Pursuant to a Judgment Entry of Sentence filed on July 2, 2002, the trial court sentenced appellant to three years in prison and ordered him to pay a fine in the amount of $500.00 and costs and to pay restitution. The trial court further ordered that appellant's sentence be served consecutively to his sentence in the Franklin County case.[1]
 {¶ 20} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 21} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING THE APPELLANT'S MOTION TO DISMISS AND MOTION TO SUPPRESS.
 {¶ 22} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY REFUSING TO CONSIDER THE APPELLANT'S MOTION TO DISMISS AND MOTION TO SUPPRESS FILED OUTSIDE OF RULE 12(C), IN THE INTEREST OF JUSTICE THUS DEPRIVING APPELLANT OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS.
 {¶ 23} "III. COUNSEL FOR APPELLANT WAS INEFFECTIVE AND ACTIONS BY THE COUNSEL WERE PREJUDICIAL TO THE APPELLANT THUS DENYING THE APPELLANT HIS RIGHT TO COMPETENT COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I {¶ 24} Appellant, in his first assignment of error, argues that the trial court erred by denying appellant's Motion to Dismiss and Motion to Suppress. We disagree.
 {¶ 25} Appellant, in his Motion to Dismiss, argued that appellant had entered into the January 5, 2001, agreement with the State of Ohio, as represented by the Franklin County Prosecuting Attorney, that the agreement provided that appellant would not be prosecuted by the State of Ohio for "crimes he admits involvement with in any way whatsoever with James Harris Smith", and that appellant complied with the terms of the agreement by fully cooperating with the Columbus Police Department and the Franklin County Prosecutor's Office. Appellant further contended that, for the above reasons, the Fairfield County Prosecuting Attorney was barred from prosecuting him.
 {¶ 26} Under Ohio law, a county prosecutor is an agent of the State of Ohio with respect to crimes committed in his or her county.State v. Barnett (1998), 124 Ohio App.3d 746, 755, 707 N.E.2d 564. Thus, a prosecutor in one county is not bound by a plea agreement agreed to by a prosecutor in another county. Id.[2] Accordingly, the Fairfield County Prosecutor was not bound by the agreement that appellant entered into with the Franklin County Prosecutor's Office.
 {¶ 27} Appellant, in his brief, argues that his confession was not admissible in the case sub judice because it was not voluntary and that, therefore, his Motion to Suppress both his confession and the DNA evidence should have been granted.[3] Thus, the issue for determination is whether appellant's statement to the Columbus Police Department was voluntary. A suspect's waiver of his right not to incriminate himself, and his later confession, must be made voluntarily, knowingly, and intelligently. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602. In order to be voluntary, a confession must be the product of a rational intellect and free will. In order to determine whether a confession was voluntarily given, the court must consider the totality of the circumstances surrounding the confession's inducement. Mincey v. Arizona
(1978), 437 U.S. 385, 98 S.Ct. 2408; State v. Barker (1978),53 Ohio St.2d 135, 372 N.E.2d 1324; State v. Edwards (1976),49 Ohio St.2d 31, 358 N.E.2d 1051, overruled on other grounds, (1978),438 U.S. 911, 98 S.Ct. 3147. The totality of the circumstances includes, but is not limited to, the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of the interrogations; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Edwards, supra. A predicate to finding a confession involuntary is the existence of coercive police conduct. State v. Dailey (1990), 53 Ohio St.3d 88, 91, 559 N.E.2d 459. The burden to establish the voluntariness of a confession, by a preponderance of the evidence, rests upon the state after a challenge has been mounted as to its admissibility. State v. Melchior (1978),56 Ohio St.2d 15, 25, 381 N.E.2d 195.
 {¶ 28} Upon our review of the transcript of the December 18, 2001, hearing, we concur with the trial court that, considering the totality of the circumstances, appellant's statement was voluntary. As an initial matter, we note that appellant did not testify at the December 18, 2001, hearing and, therefore, we cannot speculate as to what appellant would have testified. There is no evidence in the record that appellant had any mental impairment that would limit his ability to give a voluntary statement, that appellant's interrogation, which lasted approximately one hour, was lengthy or intense, or that appellant suffered physical deprivation or mistreatment or was threatened or induced into making the statement. See State v. Kulyk, Guernsey App. No. 01 CA 13,2002-Ohio-1591.
 {¶ 29} Rather, at the December 18, 2001, hearing, Detective Ellis of Columbus Police Department testified that at the time appellant was arrested, he had been given his Miranda warnings. Detective Ellis further testified that, during the interview, appellant was not under the influence of drugs and was acting rationally. The Detective also testified that, other than the agreement between appellant and the Franklin County Prosecutor's Office, appellant was not coerced in any way into making his statement by promises or inducements. When asked, Detective Ellis testified that, to the best of his knowledge, appellant's statement was voluntary. In addition, Detective Ellis testified that appellant's counsel was present when appellant gave his statement to the Columbus Police Department and that appellant's statement was made with the advice of counsel. As noted by the trial court in its February 28, 2002, memorandum of Decision, "there was no undue pressure, coercion, or improper inducement. The Defendant was given the benefit of his bargain, no prosecution by the Franklin County Prosecutor's Office. "
 {¶ 30} Based on the foregoing, we find that the trial court did not err in denying appellant's Motion to Dismiss. Since, based on the foregoing, we find that appellant's confession was voluntary and not coerced, we further find that the trial court did not err in denying appellant's Motion to Suppress both his confession and the DNA evidence.
 {¶ 31} Appellant's first assignment of error is overruled.
 II {¶ 32} Appellant, in his second assignment of error, argues that the trial court erred by refusing to consider appellant's Motion to Dismiss and Motion to Suppress filed outside of Crim.R. 12, thereby "depriving appellant of his constitutional right to due process."
 {¶ 33} Subsection D of Crim.R. 12 states as follows: "All pretrial motions except as provided in Crim.R. 7(E) and 16(F) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions." Appellant, in his brief, notes that his motions were filed 77 days after the date of his pretrial and "approximately 47 days after the judge had ordered the motions to be due within 30 days of pretrial."
 {¶ 34} The trial court, in its Memorandum of Decision, indicated that appellant's Motion to Suppress had been untimely filed. However, the trial court, in the same decision, addressed the merits of both of appellant's motions and gave its reasons for denying the same. We concur with appellee, therefore, that any error that the trial court committed by denying appellant's Motion to Suppress based on timeliness was harmless.
 {¶ 35} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 36} Appellant, in his third assignment of error, contends that he was denied the effective assistance of trial counsel. Appellant specifically argues that trial counsel was ineffective in failing, during the plea negotiations, to ascertain the full extent of the charges against appellant and the entire scope of the State's investigation and in failing to timely file the Motion to Suppress and Motion to Dismiss.
 {¶ 37} A claim for ineffective assistance of counsel requires a two-prong analysis. The first prong is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104,651 N.E.2d 965 (citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370,113 S.Ct. 838). The United States Supreme Court and the Ohio Supreme Court have both held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, 42 Ohio St.3d at 143 (citing Strickland, 466 U.S. at 697).
 {¶ 38} As is stated above, appellant maintains that his counsel was ineffective in failing to timely file the Motion to Dismiss and Motion to Suppress with the trial court. However, as appellant notes in his brief, "the court, in its Memorandum of Decision, first decided the merits of the motions then denies the motions since they were filed outside of rule." We find that appellant was not prejudiced by the untimely filing of the motions since the trial court, in reviewing the merits of the motions, found that the same lacked merit.
 {¶ 39} Appellant also asserts that his trial counsel was deficient in failing, during plea negotiations with the Franklin County Prosecutor, to ascertain the full extent of the charges against appellant and the entire scope of the State's investigation. Appellant argues that his trial counsel incorrectly assumed that all of the robberies that appellant admitted to participating in occurred within the jurisdictional province of Franklin County. However, neither appellant nor his counsel testified at the December 18, 2001, hearing before the trial court. There is, therefore, no evidence establishing that appellant's counsel assumed that all of the robberies occurred in Franklin County. Furthermore, as noted by appellee, at the December 18, 2001, hearing, testimony was adduced that DNA evidence linked appellant to at least three of the robberies. The counts for the robberies contained firearm specifications which carry mandatory three year prison terms. Thus, the total sentence that appellant received in both Franklin and Fairfield counties (an aggregate sentence of seven years) was significantly less that appellant could have received for the Franklin County charges alone. We have no evidence to indicate that the appellant could have gotten a better deal even if his counsel had included the Fairfield County Prosecutor in the original plea negotiations. We cannot find, therefore, that appellant was prejudiced.
 {¶ 40} Appellant's third assignment of error is, therefore, overruled.
 {¶ 41} Accordingly, the judgment of the Fairfield County Court of Common Pleas is affirmed.
By: Edwards, J., Hoffman, P.J., and Wise, J. concur.
[1] Appellant had been sentenced to four years in prison by the Franklin County Court of Common Pleas.
[2] In Barnett, the defendant pled guilty to one count of gross sexual imposition involving Monica Wilson, his stepdaughter. In exchange for his plea, the Warren County Prosecutor's Office agreed to dismiss sexual battery and kidnapping charges and agreed that no additional charges would be filed against the defendant. The Montgomery County Grand Jury later indicted the defendant on five counts of gross sexual imposition involving his daughter and Monica Wilson. The Defendant then filed a motion to dismiss the indictment and the trial court granted the same.
The State appealed. The Second District Court of Appeals, in Barnett, reversed the trial court's decision, holding that the plea agreement in Warren County was not binding upon the prosecutors in Montgomery County since the underlying indictments did not involve allied offenses of similar import, but rather the prosecutions involved different acts of gross sexual imposition allegedly committed in different counties on different days. The court, in Barnett, noted that it found no Ohio statutory law or case law authorizing a county prosecutor to waive prosecution for an offense committed outside his county. The court further noted that not only was there no representation by the State of Ohio that Warren County Prosecutors were authorized to act as its agents and plea bargain with respect to offenses committed outside of Warren County, but also that Ohio laws "support no such inference." Id. At 755.
While Appellant cites to State v. Urvan (1982), 4 Ohio App.3d 151,446 N.E.2d 1161 for the proposition that appellant cannot be prosecuted by the Fairfield County Prosecuting Attorney, we note that the court in Barnett specifically held that "Urvan establishes only that prosecutors in two different counties may not pursue separate charges for allied offenses of similar import." Id. at 750.
[3] As is stated above, appellant, in his Motion to Suppress, argued that his confession was not voluntary.