DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas that found appellant guilty of one count of engaging in a pattern of corrupt activity, two counts of forgery and three counts of money laundering and sentenced him to a term of imprisonment. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellant sets forth the following assignments of error:[1]
 {¶ 3} "I. The trial court erred when it denied appellant's motion to dismiss on the basis of selective prosecution.
 {¶ 4} "II. The trial court lacked jurisdiction in this case in light of the sentence imposed by the Lucas County Court of Common Pleas in the case of State of Ohio v. Charles Lake, CR00-2833 and CR00-2939.
 {¶ 5} "III. [Withdrawn]
 {¶ 6} "IV. Trial counsel was ineffective by their failure to file a motion to dismiss due to pre-indictment delay since the appellant was denied his right to due process by the state's two and one half year delay in bringing additional charges against appellant in Wood County.
 {¶ 7} "V. The trial court committed plain error when it denied appellant's motion in limine and found appellant guilty of the offense of engaging in a pattern of corrupt activity when said finding violated appellant's constitutional right against double jeopardy.
 {¶ 8} "VI. The state of Ohio violated appellant's right to due process by withholding information obtained by witnesses testifying for the state.
 {¶ 9} "VII. The cumulative effect of errors during the trial resulted in appellant being denied a fair trial."
 {¶ 10} The undisputed facts relevant to the issues raised on appeal are as follows. In 1999, at the request of the Lake Township Police Department, the Ohio Attorney General's Office, Bureau of Criminal Identification and Investigation ("BCI"), began investigating alleged illegal gambling at the Tracy Road Armory in Lake Township, Wood County, Ohio, and at locations in Lucas County, Ohio. The "Monte Carlo" games were promoted as fundraisers by various local charitable organizations. Some of those organizations were God's Church of the Street, US Foundation and Toledo Teens. Investigators learned that appellant Charles Slim Lake, also known as Reverend Slim Lake, was promoting Monte Carlo games held at the Armory. It also was determined that neither God's Church of the Street nor Toledo Teens were charitable organizations currently exempt from federal income taxation under subsections 501(a) and 501(c)(3) of the Internal Revenue Code. US Foundation was validly exempt at one time but its Articles of Incorporation had expired, invalidating its exemption. Specifically, appellant was investigated for forging IRC 501(c)(3) determination letters, paying individuals to run the Monte Carlo games in violation of R.C.2915.02(D)(1)(e), and using the proceeds for his own benefit in violation of R.C. 2915.02(D)(1)(d).
 {¶ 11} As a result of the investigation, on January 29, 2003, appellant was indicted on two counts of forgery in violation of R.C. 2913.31, four counts of money laundering in violation of R.C. 1315.55, and one count of engaging in a pattern of corrupt activity in violation of R.C. 2933.32(A). (Case no. 03-CR-059)
 {¶ 12} The state subsequently noticed several errors in the original indictment and filed a motion to amend. On April 22, 2004, the state obtained a new indictment under case no. 04-CR-171. The new indictment contained five counts: three counts of money laundering, one count of forgery and one count of engaging in a pattern of corrupt activity. After reviewing both indictments, the trial court found that some of the counts in the second indictment were merely a restatement of the counts contained in the first indictment. Accordingly, on June 23, 2004, the trial court ordered appellant tried on the five counts contained in the new indictment and two counts (forgery and money laundering) from the first indictment. Appellant entered pleas of not guilty to all charges.
 {¶ 13} On April 13, 2004, appellant filed a motion to dismiss. In support of his motion, appellant argued the state selectively prosecuted him because he is African-American. He further claimed that he had been singled out for prosecution while many other similarly situated individuals not of African-American descent were not charged. A hearing was held on June 18, 2004, and by journal entry filed July 12, 2004, the trial court denied appellant's motion.
 {¶ 14} The matter came to trial before a jury on July 19, 2004. On July 23, 2004, the jury found appellant guilty of two counts of forgery, three counts of money laundering and one count of engaging in a pattern of corrupt activity. The jury further found that appellant engaged in money laundering as part of his pattern of corrupt activity. The jury found appellant not guilty of one count of money laundering. On September 27, 2004, the trial court sentenced appellant to serve 11 months on each of the two forgery offenses, four years on each of the three money laundering offenses, and six years for the offense of engaging in a pattern of corrupt activity with specification. All sentences were ordered to be served concurrently. Appellant filed a timely appeal.
 {¶ 15} In his first assignment of error, appellant asserts the trial court erred by denying his motion to dismiss brought on the basis of selective prosecution. Appellant, who is African-American, asserted in his motion that he was singled out for prosecution on the basis of his race while other individuals similarly situated, but not of African-American descent, were not charged. Appellant further argued that the state's actions were invidious and in bad faith. On appeal, however, appellant presents a different argument in support of his claim that his motion to dismiss was improperly denied. Here, appellant attempts to support his claim that his prosecution was selective by asserting that Wood County engaged in "inexcusable and intentional delay" before charging him.
 {¶ 16} The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor. UnitedStates v. Armstrong (1996), 517 U.S. 456 at 464. That discretion is, however, subject to constitutional equal protection principles, which prohibit prosecutors from selectively prosecuting individuals based on "`an unjustifiable standard such as race, religion, or other arbitrary classification.'" Id., quoting Oyler v. Boles (1962), 368 U.S. 448, 456. Although a selective-prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an "independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." State v. Getsy
(1998), 84 Ohio St. 3d 180, 203; see, also, Armstrong,517 U.S. at 463.
 {¶ 17} To support a claim of selective prosecution, "`a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.'" State v. Flynt (1980),63 Ohio St. 2d 132, 134, quoting United States v. Berrios (C.A.2, 1974),501 F.2d 1207, 1211. In this case, appellant has failed to satisfy either prong.
 {¶ 18} The record does not support appellant's claim that he was "singled out" for prosecution. To the contrary, Agent Mulinix of the BCI testified that appellant was one of four promoters investigated as of 1999. Three of those individuals were charged as a result of the investigation. Ultimately, eight individuals who were either promoters or dealers at the Monte Carlo games were prosecuted. As to the second prong of the Flynt test, appellant has not provided any evidence that he was prosecuted because of his race. Accordingly, the selective prosecution argument presented to the trial court was wholly without merit.
 {¶ 19} The argument appellant presents on appeal in support of his claim of selective prosecution is also without merit. Appellant claims "inexcusable and intentional delay" by Wood County. The record reflects that appellant's illegal activities in Wood and Lucas Counties were investigated simultaneously beginning in 1999. Appellant was charged in Lucas County and convicted in 2000 of four counts of engaging in a pattern of corrupt activity. He was sentenced to four years incarceration and five years community control. He was indicted by a Wood County Grand Jury in January 2003, and was granted judicial release in Lucas County in March 2003. Appellant does not explain how the Wood County prosecutor intentionally delayed pursuing the charges against him, how he was prejudiced by not being charged until 2003, or how the prosecutor's actions constituted selective prosecution as defined by Flynt, supra. This argument is without merit.
 {¶ 20} Based on the foregoing, we find that the trial court did not err by denying appellant's motion to dismiss and his first assignment of error is not well-taken.
 {¶ 21} We will next consider appellant's fourth assignment of error, which also raises the issue of a "delay" in his prosecution. In this assignment of error, appellant asserts trial counsel was ineffective due to a "failure to raise this issue at trial or in a pre-trial motion to dismiss." The record reflects that the issue of a delay in prosecuting appellant was not raised in the trial court. His pre-trial motion to dismiss was premised on selective prosecution, as discussed above. However, in response to appellant's first assignment of error, this court considered appellant's claim that Wood County delayed to his prejudice by not charging him until 2003. Based on our determination in appellant's first assignment of error that appellant has not supported the claim of "delayed prosecution," his assertion that trial counsel was ineffective for failing to raise the issue is without merit. Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 22} In his second assignment of error, appellant asserts the trial court lacked jurisdiction in this case because the charges were based on actions that arose out of the same course of conduct for which he was convicted in Lucas County. Appellant argues that his actions in Wood and Lucas Counties constituted one continuous course of conduct.
 {¶ 23} Ohio courts have held that the state is prohibited from pursuing separate charges against a defendant in different counties if the charges arose out of the same course of conduct.State v. Urvan (1982), 4 Ohio App.3d 151. In support of his claim, appellant refers to remarks made by the Lucas County judge when appellant was sentenced in that county. Appellant claims that at sentencing in Lucas County the judge "took into consideration" allegations regarding his Monte Carlo activities in Wood County. Appellant makes a major — and unfounded — leap from the Lucas County judge's remarks to the conclusion that the charges brought against him in Wood County originated from the same course of conduct as the charges on which he was convicted in Lucas County. In considering appellant's argument, we note that statements allegedly made by the Lucas County judge form the sole basis for appellant's claim. Statements about a criminal investigation made by a judge at sentencing in one case simply do not support a claim that separate charges brought later in a different county constitute a continuing course of conduct. Further, the Lucas County judge's statements to which appellant refers are not a part of the record in this case and we are unable to consider them. Based on the foregoing, appellant's argument that the trial court lacked jurisdiction in this matter is without merit. Appellant's second assignment of error is not well-taken.
 {¶ 24} Appellant presents a similar argument in support of his fifth assignment of error. Appellant claims that the finding that he engaged in a pattern of corrupt activity subjected him to double jeopardy because he was convicted of the same offense in Lucas County. In support, appellant argues that his Wood County conviction was based on the same evidence as was his conviction for that offense in Lucas County. Specifically, appellant cites the testimony of Pamela Strezinski, who attended Monte Carlo games at the Tracey Road Armory in Wood County and also borrowed $6,000 from appellant. Appellant claims the state proffered Strezinski's testimony in the Lucas County case in support of the charge of engaging in a pattern of corrupt activity and appears to assert that the proffered testimony related to appellant's activities in Wood County. Once again, appellant attempts to persuade this court with evidence that is not in the record before us. Our record shows that Strezinski did indeed testify in the instant case. We have no record, however, of her testimony, proffered or otherwise, in the Lucas County trial. Consequently, appellant has presented no evidence that he was prosecuted twice for the same offense. Accordingly, appellant's fifth assignment of error is not well-taken.
 {¶ 25} In his sixth assignment of error, appellant asserts the state withheld exculpatory evidence consisting of taped conversations between himself and Pamela Strezinski and financial documents produced by another witness.
 {¶ 26} Appellant refers to documents produced by witness Mildred Clark. He asserts that while financial documents obtained by investigating agents were provided to the defense during discovery, documents prosecutors obtained from Clark were withheld. Appellant states that the documents could have been used "for impeachment purposes and to further disprove the State's case." However, in the four sentences he devotes to this issue in his brief, he does not explain the nature of the documents in Clark's possession or how they were withheld. He also does not explain how he might have been prejudiced by admission of the documents during the state's case.
 {¶ 27} Based on the testimony of Clark and Agent Mulinix, it appears the documents to which appellant refers consisted of financial records of several Monte Carlo events sponsored by the Ghanaian Foundation which the investigators received from Clark approximately two weeks before trial. The record indicates that during Clark's testimony regarding the documents, defense counsel asked for a mistrial, stating he had not received copies prior to trial. The prosecutor responded that she had provided the documents to the defense and the motion for a mistrial was denied. Defense counsel cross-examined Clark and Agent Milinix at length regarding the documents and did not object when they were admitted into evidence. Based on the foregoing, appellant's arguments as to the documents provided by witness Clark are without merit.
 {¶ 28} Appellant also asserts that certain videotapes were withheld from the defense. Appellant does not identify the tapes other than as "taped conversations between Appellant and [Pamela] Strezinski." Our examination of the record indicates that the videotapes in question were offered by the state as evidence of appellant receiving pay-offs for loans he had made to Strezinski. When trial counsel was asked if he objected to the three videotapes being played for the jury, he responded that he did not. He also did not indicate at that time that he had been denied access to the videotapes. Further, defense counsel cross-examined Strezinski and the agent who arranged for the transactions to be taped. It appears to this court from the record that the issue of whether the state withheld the videotapes was not raised at trial. "The general rule is that an `appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" State v. Awan (1986), 22 Ohio St.3d 120, 122 (citation omitted). Since an objection to these tapes was not raised at trial, we review the admission of these tapes under a plain error standard. Plain error is an error or defect at trial, not brought to the attention of the court, that affects a substantial right of the defendant. Crim.R. 52(B). Appellant has not shown that the trial court erred by admitting the videotapes. Appellant's brief contains one sentence related to the videotapes in which he states "* * * the taped conversations between Appellant and Ms. Strezinski was [sic] material in that the taped conversations would have impeached the testimony proffered at trial by Ms. Strezinski and further gone to disprove the charge of engaging in a pattern of corrupt activity." Appellant does not discuss the content of the tapes. Based on the foregoing, we find this argument is without merit.
 {¶ 29} Accordingly, appellant's sixth assignment of error is not well-taken.
 {¶ 30} In his seventh assignment of error, appellant asserts that the cumulative effect of errors raised on appeal deprived him of his right to a fair trial. Since appellant has failed to demonstrate any instances of error in the proceedings below, there can be no "cumulative effect" of errors. Accordingly, appellant's seventh assignment of error is not well-taken.
 {¶ 31} Upon consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Singer, P.J. Parish, J. Concur.
[1] Following oral argument before this court, appellant withdrew Assignment of Error No. 3 as set forth in his appellate brief.